JOHN L. IRWIN *vs.* MICHAEL PIERRO.

November 14, 1890.

"Decree of Heirship"—Effect as Evidence.—Laws 1885, *c.* 50, merely established a rule of evidence by which a "decree of heirship" was made *prima facie* evidence of certain facts, and cast the burden of disproving them upon the opposite party. After the repeal of this statute by the new Probate Code, such "decrees" ceased to have any probative force whatever, and, even although admitted without objection, proved nothing.

Taxes—Delinquent List—Proof of Publication.—Proof of publication of a delinquent-tax list considered, and *held* sufficient.

Appeal by plaintiff from an order of the district court for Hennepin county, refusing a new trial after a trial before *Hicks*, J., (a jury being waived,) and judgment ordered for defendant.

*James V. McHugh* and *Frank H. Carleton*, for appellant.

*Ueland, Shores & Holt*, for respondent.

MITCHELL, J. This was an action of ejectment, in which the plaintiff claimed the premises under the patent title, while defendant claimed them under two tax-titles,—one under Laws 1875, *c.* 7, and the other under Laws 1881, *c.* 135. The cause was rightly decided

against the plaintiff on either or both of two grounds: *First,* that he failed to connect himself with the patent title; and, *second,* the defendant established a paramount title under the tax-sales, at least under that of 1875. Plaintiff sufficiently proved the patent title to have been in one David Irwin, but the only evidence by which he attempted to connect himself with the title of Irwin was two "decrees of heirship" of the probate court of Hennepin county, (where the premises are situated,) made pursuant to the provisions of Laws 1885, *c.* 50, the one assuming to find and decree that one Michael Irwin was the sole heir of David Irwin, deceased and intestate, and the other that plaintiff and his grantors were the heirs-at-law of Michael Irwin, also deceased and intestate.

The terms used in this statute would seem to indicate that the legislature had in mind a judicial proceeding resulting in a judgment of the court determining heirship or succession to real estate. But, if this is the construction to be placed upon the act, it is clearly unconstitutional. It does not contemplate or provide for taking possession or custody of the estate of the deceased for administration or for any other purpose; neither does it provide for or require the giving of notice of any kind to parties interested in the estate, or giving them any opportunity or right of appearing and being heard in the matter. Under the provisions of this act, a party, without notice to any one, could simply present his *ex parte* affidavit and petition to the probate judge, who might forthwith, and without hearing any other evidence, unless in his arbitrary discretion he saw fit to do so, enter a "decree" adjudging that a party had died intestate, and that the petitioner as his heir was the owner of the real estate described in the petition. Such proceedings are in no sense judicial, and are without binding force on any one. This is not "due process of law," which requires notice and hearing before judgment. *Bardwell* v. *Collins, supra,* p. 97. Another construction which may be put upon the act, and the only one upon which it can be possibly held valid, is that the legislature merely intended to establish a rule of evidence, by which, upon the introduction of a "decree" of this kind, the burden would be cast upon the opposite party to disprove the facts found therein. The provision that such decrees "shall be taken and held   *   *   *   *prima*

*facie* evidence of all the facts found in said decree" strongly indicates that this was all the legislature intended, although it must be admitted that in other parts of the act they have used very inapt language to express any such intention. But the repeal of the statute by chapter 21 of the new Probate Code, (Laws 1889, c. 46, § 322, p. 158,) which took effect before the trial of this action, deprived these so-called "decrees" of all evidential force or value. When the trial took place there was no provision of law by which they were made evidence of any fact. The plaintiff could not then try his action by any rule of evidence provided for in the repealed act, for a party has no vested right in mere rules of evidence. They pertain merely to the remedy, which the legislature may change at pleasure.

Plaintiff, however, earnestly contends that defendant's objections on the trial to the introduction of this evidence were not sufficiently specific to suggest or raise this point. But it would have made no difference if he had not objected at all, for, when admitted, the evidence proved nothing. After the repeal of the statute, the law ascribed to these decrees no probative value whatever under any circumstances. It is not at all analogous to a case where secondary evidence is introduced without laying the foundation for it, or where a writing or record is offered without due proof of its execution or authenticity, or where expert evidence is admitted without proof of the competency of the witness. There was, therefore, an entire failure of proof of title in plaintiff, and for that reason if no other judgment should have gone against him.

The same result, however, is reached from a consideration of defendant's showing of title in himself, at least under the tax-sale of 1875, which, of course, would be paramount to and extinguish the patent title. Several objections are raised by plaintiff to the proceedings under which this sale was made, the most substantial of which is the alleged insufficiency of the proof of publication of the tax-list in the Minneapolis Weekly Tribune, the newspaper designated by resolution of the board of county commissioners. The affidavit is attached to a copy of the Minneapolis Weekly Tribune, to which it refers as containing, and which does in fact contain, the printed tax-list, and states that the affiant was, during all the time mentioned in the

affidavit, foreman and *printer* in the office of the Weekly Tribune, a newspaper printed and published at the city of Minneapolis, and that, of his own personal knowledge, the delinquent-tax list, a printed copy of which is herewith filed, (in the copy of the Minneapolis Weekly Tribune, attached to the affidavit,) was printed and published for three successive weeks, giving the three dates of publication, one of which is the date of the copy of the Minneapolis Weekly Tribune attached.   While this affidavit is somewhat informal in not stating expressly, and in so many words, that the publication was made in the Minneapolis Weekly Tribune, yet we think that fact is clearly implied and fairly appears from what is expressly stated, especially as it does not appear that there is any other Weekly Tribune printed and published in Minneapolis.   The objection that there were two separate tax judgments against each of the lots is not supported by the record, which shows but one judgment, although itemized so as to show separately the amount of taxes for the years 1871 and 1872 which go to make it up.   The other objections to this tax-sale are not of sufficient importance to require further notice than to say that we do not think any of them well taken.   It therefore becomes unnecessary to consider the tax-title acquired under the sale of 1881.

Order affirmed.