## HUDSON-DULUTH FURRIERS, INC. v. GEORGE W. McCULLOUGH AND OTHERS.[1]

February 27, 1931.

No. 28,181.

[1]Reported in 235 N. W. 537.

*Henry N. Benson,* Attorney General, and *Chester S. Wilson,* Assistant Attorney General, for appellants.

*Toivonen & Harri,* for respondent.

WILSON, C. J.

Defendants appeal from an order granting a new trial, the court having certified that said order was based "exclusively upon errors occurring at the trial."

The action is to recover 52 beaver skins or the value thereof, alleged to be $1,040. The verdict was for defendants. Defendant Gould was the state game and fish commissioner and is now succeeded by defendant McCullough. The action has been dismissed as to the other defendants, who were game wardens.

Plaintiff is a corporation originally organized as the Hudson Bay Fur Company. Samuel Cohen is its president and Joseph Cohn is its vice president and manager. These two men are also copartners doing business under the same name as the corporation. The corporation manufactures and retails fur garments at Duluth. The copartnership buys and sells raw furs. Samuel Cohen is in charge of the copartnership business. The copartnership sold furs to the corporation. The 52 beaver skins were selected by Joseph Cohn from the copartnership furs for use by the corporation.

On May 11, 1926, Joseph Cohn and one John Erickson, a fur buyer employed by the copartnership, delivered the skins to be tanned and dressed at a fur tannery at Columbia Heights in Anoka county near Minneapolis operated by Herman Ott under the name of the Superior Fur Dressing Company. Two weeks later two state game wardens searched Ott's tannery and found the skins concealed in an elevator shaft. The skins bore no official tags of any kind and were not accompanied by any proof of their legality. Hence they were seized. No evidence or information as to the origin of the skins was submitted to the game and fish department until in July, 1929, just before this action was commenced, and after a lapse of more than three years, that being the period in which a criminal prosecution would outlaw. Plaintiff knew on May 27, 1926, that the skins had been so seized. On that date defendant Gould was permitted to examine the copartnership books, but access to the corporation books was refused. Plaintiff now claims that the skins came from two shipments from Canada in March and April, 1926.

■ Good practice dictates that when a trial court grants a new trial "exclusively upon errors occurring at the trial," thereby making the order appealable under G. S. 1923 (2 Mason, 1927) § 9498(4) it should state what the errors are. This would materially reduce the work for counsel and this court. Were it not for the unusual character of one feature upon which we will dispose of this appeal, it would be necessary for us to cover all of the assignments of error contained in the motion for a new trial

584

and discuss the merits of each in our effort to find the error or errors which prompted the trial court to grant the new trial.

■ The refusal to direct a verdict and the claim that the verdict was not justified by the evidence rest largely on the claim that the plaintiff offered evidence as to the source of the skins and that no witness directly disputed plaintiff's testimony and evidence relative thereto. The claim is that the evidence is conclusive that the skins came from a probable legal supply. It is said by plaintiff that the only evidence the state had was the finding of the skins without retaining tags and unaccompanied by any proof of their lawful origin.

But this circumstance was presumptive evidence that the skins were unlawfully taken. G. S. 1923 (1 Mason, 1927) § 5512. This means that the circumstance made a prima facie case sufficient to take the matter to the jury. State v. Simon, 163 Minn. 317, 203 N. W. 989. It called for explanation. Whether the explanation was sufficient to destroy the prima facie case was for the jury. As to the effect of a prima facie case see Heffter v. Northern States Power Co. 173 Minn. 215, 217 N. W. 102. It puts the burden on the adversary to go forward with the evidence. 2 Dunnell, Minn. Dig. (2 ed. & Supp.) § 3468. It is not error to say the burden is upon the one so in possession. Cohen v. Kauppi, 172 Minn. 469, 215 N. W. 837.

The record discloses many circumstances, inconsistencies, alleged improbabilities and unusual things, methods of bookkeeping, oral and written discrepancies which tend to discredit plaintiff's evidence as to the source of these skins. The question was for the jury.

■ If these hides were lawfully taken within or without the state the owner was in rightful possession, but he is admonished by the statute to have proof that the hides were so taken. G. S. 1923, § 5547, as amended, 1 Mason, 1927, id. This proof may consist of retaining tags issued by the game and fish department. In the absence of the skins' being so officially tagged, they should be accompanied by proof of their lawful origin. These skins did not

have the retaining tags. We are confronted squarely with the inquiry as to when is the proof of legal origin to be furnished.

Raw skins must be disposed of promptly or put in cold storage. The commissioner upon seizing such skins must proceed with reasonable promptness. The legislature could not have intended to provide a means which would handicap the service of the game and fish department. The statute says "upon proof that the hides were so taken." This means the possession is lawful "upon proof." The possession of such skins without retaining tags and without such proof is criminal, and it may become the duty of the game and fish department to prosecute the offender. How long is the commissioner or his warden to wait for the furnishing of the "proof"? We are of the opinion that this statute means that the proof must accompany the skins and be found with them or be available forthwith. The required evidence must be at hand and available as soon as the owner learns of the seizure. The owner should be allowed time to get the required proof from his office or other place where he reasonably has it available. The better practice for the fur man would be to have such evidence accompany the skins. It could reasonably be done; it would reflect proper co-operative spirit on his part, and it would aid the public officials who have duties in reference thereto.

In the instant case plaintiff waited over three years before making any effort to produce the required proof. This was an unreasonable delay and as a matter of law was fatal to plaintiff's recovery herein. Because thereof defendants were entitled to a directed verdict. Such being the case, plaintiff cannot recover in this action, and it becomes unnecessary for us to perform the laborious duty of seeking the errors occurring at the trial which prompted the making of the order from which the appeal was taken.

Reversed.