·RAY FUNK v. MINNESOTA MINING & MANUFACTURING
COMPANY AND ANOTHER.[1]

October 26, 1934.

No. 30,068.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly,* for relators.
*B. A. McLeod,* for respondent.

*LORING, Justice.*

This case comes here upon a writ of *certiorari* to review a decision of the industrial commission awarding compensation to respondent on account of an occupational disease caused by chronic benzol poisoning. The sole question presented is whether such poisoning comes within the definition contained in paragraph 7 of subsection 9 of 1 Mason Minn. St. 1927, § 4327. Subsection 1 of § 4327 provides in part:

"The disablement of an employe resulting from an occupational disease described in subsection (9) of this section, except where specifically otherwise provided, shall be treated as the happening of an accident within the meaning of Part 2 of this act　*　*　*."

[1]Reported in 256 N. W. 889.

Subsection 2 of § 4327 provides in part:

"If an employe is disabled or dies and his disability or death is caused by one of the diseases mentioned in subsection (9) of this section, and the disease is due to the nature of the corresponding employment as described by such subsection in which such employe was engaged and was contracted therein, he or his dependents shall be entitled to compensation for his death or for the duration of his disability according to the provisions of Part 2 of this act."

Subsection 9 provides that, for the purposes of the act, only the diseases enumerated in that section shall be deemed to be occupational diseases and hence compensable under the act. The subsection contains a schedule in two columns. In column one there is a description of the diseases and in column two a description of the processes which raise a presumption that the disease was due to the nature of the employment in which the employe was engaged. Subsection 8 provides:

"If the employe, at or immediately before the date of disablement, was employed in any process mentioned in the second column of the schedule of diseases in subsection (9) of this section, and his disease is the disease in the first column of such schedule set opposite the description of the process, the disease presumptively shall be deemed to have been due to the nature of that employment."

Paragraph 7 of column one reads:

"Poisoning by nitro and amido-derivatives of benzine (dinitrobenzol, anilin and others), or its sequelae."

Opposite this, paragraph 7 reads:

"Any process involving the use of nitro or amido-derivative of benzine or its preparations or compounds."

The respondent was employed by the company in the production of rubber cement tape. Benzol was placed in a mixing churn and rubber and other solid ingredients added to the contents of the churn, which continued the mixing process for about 24 hours. The compound or preparation was then drawn into five-gallon cans

and taken to a box or hopper, where it was spread upon the material to be made into tape. The respondent was engaged, among other duties, in pouring the preparation into the box or hopper. In so doing he was exposed to the fumes from the benzol preparation, which resulted in his disability.

It is conceded that the word "benzine" was used by the legislature as meaning benzene or benzol, $C6H6$ and not $CnH2n+2$, the ordinary benzine. The effects of poisoning from the fumes of the benzol derivatives is usually acute, while those from benzol are characterized as chronic. Did the legislature intend to distinguish between benzol and its derivatives and to include the latter and exclude the former as a cause of occupational disease? It is conceded that benzol poisoning is a typical occupational disease in the general sense and might well have been included in the coverage of subsection 9. If the legislature intended to exclude benzol, there was no rational basis for the exclusion. We think the language of column one should be interpreted liberally in connection with that in column two, where "its" evidently refers to benzol, and "preparations" apparently would cover mixtures such as that which caused respondent's disability. Therefore benzol poisoning is properly compensable when occurring under the circumstances set out in column two.

The decision of the commission is affirmed and the writ discharged.

*STONE, Justice,* took no part.