## STATE FIRE MARSHAL v. B. C. SHERMAN AND OTHERS.[1]

January 14, 1938.

No. 31,437.

[1]Reported in 277 N. W. 249.

*Edwin Adams, N. I. Johnson,* and *Christian G. Dosland,* for appellants.

*William S. Ervin,* Attorney General, *Louis F. Soukup* and *Joseph H. Seeger,* Special Assistant Attorneys General, and *Garfield H. Rustad,* for respondent.

JULIUS J. OLSON, JUSTICE.

April 16, 1936, pursuant to authority granted by 1 Mason Minn. St. 1927, §§ 5961-5968, the state fire marshal made an order condemning an old frame building in Moorhead found by him to be a fire hazard, dangerous to life and limb. It was ordered demolished. The owners interposed objections. After hearing duly had upon issues framed, the court made and entered its findings and order sustaining in all respects that of the marshal. The owners appeal from an order denying their motion for new trial.

Appellants raise two questions: (1) The constitutionality of that part of § 5966 making the marshal's order of condemnation *prima facie* evidence of the facts therein recited; (2) the sufficiency of the evidence.

Attacked as a violation of the constitutional requirement of due process of law is the following portion of § 5966: "upon such trial the order of condemnation shall be prima facie evidence of the existence of the facts therein recited."

There is nothing of newness about the questioned provision. Our statutes are littered with the same or similar provisions. (For example, L. 1883, c. 112, making a sheriff's certificate *prima facie* evidence of full compliance with mortgage foreclosure sale requirements; L. 1885, c. 50, a "decree" of heirship was made *prima facie*

▀▀▀▀▀▀▀

evidence of certain facts; L. 1899, c. 284, records of surveys of municipal engineering departments were made *prima facie* evidence of correctness of their contents, and many others.) Each has been upheld on attack. See Burke v. Lacock, 41 Minn. 250, 42 N. W. 1016; Irwin v. Pierro, 44 Minn. 490, 47 N. W. 154; Fish v. C. St. P. & K. C. Ry. Co. 82 Minn. 9, 84 N. W. 458, 83 A. S. R. 398. Those provisions but create a rule of evidence in which there is no vested right. *Id.* The *prima facie* case, which the statute purports to create, simply means that the burden of going forward with the evidence shifts. Hudson-Duluth Furriers, Inc. v. McCullough, 182 Minn. 581, 235 N. W. 537; Topinka v. Minnesota Mut. L. Ins. Co. 189 Minn. 75, 248 N. W. 660, 95 A. L. R. 739.

The constitutional validity of such statutory enactments is so well established that further discussion would render us prolix. We but refer to the cited cases.

▀▀▀▀ The condemned building is an old frame two-story structure in the business district of the city. It was built sometime prior to 1880. For years the lower story has been used as a harness sale and repair shop. That type of merchandise is stored in the forepart, the workshop is in the rear. There are five rooms upstairs. B. C. Sherman, one of the owners, lives in three of them. The others serve as storage rooms for miscellanea. The front (south wall) is brick veneered. The east abuts upon an adjoining building. The west and north sides are in greater part tin-covered. Alongside the former there is an inclosed wooden stairway leading to the upper story. The roof over the main or front part of the structure is wood shingle, old and worn. Many of the shingles are missing or curled so as to expose the paper beneath. The roof over the workshop, being the rear roof, is of composition construction— paper, tar, and gravel. Neither has been repaired for years. There is no basement.

The whole structure leans to the west. Every wall is out of plumb in some degree. The front has settled at least two or three inches. The east wall leans away from that of the adjoining building at least an inch or more at the top. The west wall bulges in two or more places. Supposed supporting sills are decayed. The

stairway is in fair condition although sagged and out of line. The brick veneer is admittedly in a state of disrepair. There are cracks, loose bricks, and the cement is no longer effectively functioning as such. The building tilts to the front and west. There is evidence that it is separated somewhat from the frame structure to which it was attached. Water can and does seep through, increasing its already perilous nature. The lower floor is worn, warped, and uneven. It has sagged two or three inches. The supporting sills and joists have rotted so the building is continually settling. The east side of the shop is "littered with rubbish, dirt, and dust." In the rear are kept several harness oil drums. Drippings from harness leather soaked in oil and hung to dry, together with overflow from the drums themselves, have saturated the floor. Sawdust is utilized to absorb the loose oil. The condition in general is ideally set for spontaneous combustion. The second-story floor slants considerably toward the front. The plaster on the walls is cracked and has fallen away in many places. On the ceiling the wallpaper is loose and spotted where roof leaks have occurred. There is evidence that "fuse blocks were overfused, drop cords were frayed and the insulation was worn off." Wires hang over metal hooks. There is no need of further detail. From what has been related and upon the record as a whole, the evidence, we think, supports the finding that the building is a fire hazard and dangerous.

But appellants claim that the building is now worth from $2,000 to $3,000; that it can be put in a good state of repair for about $300 to $400; that when so repaired it will be worth from $2,300 to $3,400. That claim was met and in the opinion of the trial court found to be overcome by the testimony of respondent's witnesses, Mr. Himsl, deputy fire marshal, Mr. Remley, Moorhead fire chief, and Mr. Melvey, a contractor of good standing and long experience. They were unanimously of opinion that the structure as it stands is but worth wrecking salvage. The only proper thing to do, they testified, is to tear it all down and build again from the bottom. Even appellants' own testimony so intimated. Mr. Sherman, a witness and one of the owners, stated that "today you couldn't get nothing only what the person would think that the timber was worth

for tearing it down." Appellants claim that repair costs would be confined primarily to the brick front. They fail to take into account the cost attendant upon the necessary repair of the floors (it is doubtful whether the lower floor could be repaired in view of its saturation with oil), inner walls, electric wiring with proper insulation, and, obviously, a new roof. Even so, the structure would still be in need of a new foundation to keep it reasonably plumb. The court found the structure to be of little, if any, value and "beyond reasonable repair." As it is situated in the business section of the city "with other buildings immediately adjacent thereto in which human beings reside," obviously it is a public menace. We cannot say that the evidence does not reasonably sustain the court's determination that this "building is especially liable to fire and constitutes a fire hazard to adjacent buildings," and that it is "dangerous to life and limb."

We have not overlooked our former cases such as York v. Hargadine, 142 Minn. 219, 171 N. W. 773, 3 A. L. R. 1627, and State Fire Marshal v. Fitzpatrick, 149 Minn. 203, 183 N. W. 141. And we are not to be understood as in any way changing the limitations therein clearly stated:

"The law in question is drastic. It authorizes the destruction of property without compensation. The state, in the exercise of its police power, may do this, but the necessity for thus sacrificing private property must clearly appear. The law itself holds out an alternative by which the owner may be directed to alter or repair so as to eliminate danger. When the police power of the state is exerted against property it is ordinarily to regulate its use, not to destroy it. Destroying or depriving the owner thereof is a last resort, unless the property is of such nature that its use or possession cannot be other than for evil. It was said in York v. Hargadine, 142 Minn. 219, 171 N. W. 773, 3 A. L. R. 1627, that the fire marshal and the courts should exercise the power conferred by the law in question with great caution. 'Where repairs or alterations can be made lawfully upon a wooden building so as to eliminate the special dangers arising from its location and condition to sur-

rounding property and to persons, such repairs or alterations should be ordered rather than a tearing down of the building.' The police power cannot be extended by the authority which is intrusted with its exercise to an arbitrary misuse of private rights. Northwestern Tel. Exch. Co. v. City of Minneapolis, 81 Minn. 140, 83 N. W. 527, 86 N. W. 69, 53 L. R. A. 175." (State Fire Marshal v. Fitzpatrick, 149 Minn. 203, 205-206, 183 N. W. 141, 142.)

The court undoubtedly was advised of these cases. The record and findings so indicate.

"Our statutes define certain conditions and acts to be private or public nuisances, and provide for their abatement or redress. If a structure is so old and dilapidated that it endangers life and limb or buildings and property in the vicinity, it is in fact a nuisance, although that word is not applied to it in the act. We deem chapter 469, p. 803, Laws 1917, a valid exercise of the police power so far as it relates to condemning buildings found in the condition therein prescribed. Public welfare calls for the abatement of that which endangers life and property. Such abatement is not in any sense a taking of private property for public use, entitling the owner to compensation. The public takes nothing, it simply causes one who maintains upon his land that which unduly endangers life and property to remove it." (York v. Hargadine, 142 Minn. 219, 221, 171 N. W. 773, 774, 3 A. L. R. 1627.)

After all, we are but reviewing fact issues. It does not lie with us to determine these. Our duty is to examine the record and ascertain therefrom whether the evidence reasonably supports what the trier of fact has determined.

The order must be and is affirmed.

MR. JUSTICE LORING took no part in the consideration or decision of this case.

MR. JUSTICE PETERSON, having been of counsel as attorney general, took no part in the decision of this case.