## ANGUS MALZAC v. WALTER SALMIO AND OTHERS.[1]

December 8, 1939.

No. 32,143.

*Holmes, Mayall, Reavill & Neimeyer,* for relators.

*Nelson & Cedergren,* for respondent.

JULIUS J. OLSON, JUSTICE.

From an award of compensation the employers, a copartnership, and insurer bring *certiorari* to review its validity.

The facts are not in substantial dispute and may be thus summarized: Employe commenced working for his employers in April, 1938, as an apprentice painter, his employers being engaged in that business. His work consisted primarily of washing floors, walls, varnishing and painting, and "stuff like that." On the morning of June 30 he and other employes were engaged in washing the very grimy and dirty walls of Maccabee Hall, in Duluth. To bring about the removal of such grime and dirt, a washing powder dissolved in water was used, three to four handfuls of powder in each pail of water. During that afternoon his hands itched and burned, and in the evening he observed that his hands

[1]Reported in 288 N. W. 837.

and more especially the palms were covered with red blotches. He suffered much discomfort that night. On the following day he did other work of a trifling character because of the pain he was suffering. His condition grew worse, and on July 5, pursuant to his employers' suggestions, he consulted Dr. Becker, a recognized specialist in skin diseases. He was incapacitated over a period of 11 weeks and incurred some items for medical services, medicine, and laboratory expense in rather minor amounts (the whole being only $55.95). His wages were $18 per week, and the compensation award was placed at $12 per week for a period of 11 weeks. The award is challenged upon the claim that there is no evidence in the record "that the disease causing disability was 'phosphorus poisoning, or its sequelae.' " Relators concede "that the employe was disabled for the period found by the referee, * * * that the washing powder used by the employe was a compound of phosphorus and that the use of the washing powder in the way described in the testimony constituted a 'process' within the meaning of the statute." But, so they say, "these facts * * * are clearly not sufficient to warrant an award of compensation" unless the employe's disability was brought about or caused by " 'phosphorus poisoning, or its sequelae.' "

A chemist of many years' experience testified that the washing powder used contained 59.31 per cent of trisodium phosphate and 39.84 per cent of water. It is a "cleansing agent * * * used in connection with cleaning various things * * * it dissolves any grease, oil, or dirt that is present, and this in turn can be washed away with more water," and "technically speaking it is a compound of phosphorus." When it comes in contact with the human skin its tendency is "to remove the natural grease or oil found in the skin and thereby drying" it. "Prolonged use will tend to dry" the skin "enough so that" it will "begin to crack and leave open sores." Its effect upon people is not the same in all cases as "no two human beings are the same."

When the employe called on Dr. Becker on July 5 he was suffering with "acute dermatitis" on his hands, and lesions on

the elbows and knees, diagnosed as "psoriasis." There was general redness and swelling of the hands and some small water blisters around the fingers. The doctor treated him by application of ultraviolet light, by injection of liver extract, and by giving X-ray treatments on his hands and arms. There developed a psoriasis upon his body which became quite generalized. His condition was fairly well arrested at time of hearing in September. The doctor found the employe's condition not up to par "because there is a certain amount of inflammation and absorption of material from the inflammation into the skin." Plaintiff's dermatitis was caused by the washing powder, and this in turn brought on an acute attack of psoriasis. In other words, the dermatitis aggravated the psoriasis and caused it to spread over his body. In his opinion, "it may well be that a combination of sodium and phosphoric acid would be irritating to some people." Dr. Nicholson also was of opinion that when he examined the employe on July 5 the dermatitis (defined as an inflammation of the skin) was acute and was due to the solution he had used in washing the walls. So it seems perfectly obvious that the use of this washing powder was the potent agency causing employe's injuries. The only question to be answered is whether this injury may be so classified as to bring it within the occupational disease provision of our compensation act.

The applicable provisions of the compensation act may be thus summarized (1 Mason Minn. St. 1927, § 4327):

"(1) The disablement of an employe resulting from an occupational disease described in subsection (9) of this section, * * * shall be treated as the happening of an accident within the meaning * * * of this act * * *. Whenever used in this section, 'disability' means the state of being disabled from earning full wages at the work at which the employe was last employed, and 'disablement' means the act of becoming so disabled.

"(2) If an employe is disabled * * * by one of the diseases mentioned in sub-section (9) * * * and the disease is due to the nature of the corresponding employment * * * and

was contracted therein, he * * * shall be entitled to compensation * * * for the duration of his disability according to the provisions * * * of this act, * * *.

"(8) If the employe, at or immediately before the date of disablement, was employed in any process mentioned in the second column of the schedule of diseases in sub-section (9) of this section, and his disease is the disease in the first column of such schedule set opposite the description of the process, the disease presumptively shall be deemed to have been due to the nature of that employment.

"(9) For the purposes of this act only the diseases enumerated in column one, following, shall be deemed to be occupational diseases:

"Column 1.

"Description of Diseases.          Description of Process.

* * * * *

"4. Phosphorous poisoning or      4. Any process involving the
its sequelae.                     use of phosphorous or its preparations or compounds."

The constituent elements of trisodium phosphate are sodium, oxygen, and phosphorus. And, as we have seen, the washing powder used contained 59.31 per cent of this compound. According to well recognized authority (Stedman's Medical Dictionary), "phosphorus is exceedingly poisonous, causing intense inflammation and fatty degeneration; inhalation of the fumes by workers in phosphorus may cause necrosis of the jaw (*phossy jaw*)." As neither sodium nor oxygen is poisonous, it rationally follows that the employe's injury must have been caused by the phosphorus. If the result is not phosphorus poisoning, what is it? Beyond doubt the employe was poisoned to the extent we have related. Other causes being eliminated, the harmful element of phosphorus alone remains. Compare Jacobson v. Cohen, 244 App. Div. 855, 279 N. Y. S. 750.

We think the triers of fact could find, as they did, that the "employe suffered a disability which arose out of and in the

434

course of said employment by reason of becoming afflicted with an occupational disease, more specially phosphorus poisoning or its sequelae."

Writ discharged and award affirmed. Respondent will be allowed $75 attorney's fees in this court plus statutory costs and disbursements.

So ordered.