MABEL A. OGREN v. CITY OF DULUTH.[1]

April 20, 1945.

No. 33,947.

[1]Reported in 18 N. W. (2d) 535.

*Harry E. Weinberg,* City Attorney, and *Ray W. Bruess,* Assistant City Attorney, for relator.

*M. J. McKeon,* for respondent.

PETERSON, JUSTICE.

On October 25, 1943, respondent filed a claim petition for workmen's compensation benefits on account of the death of her husband, alleged to have been caused by "myocarditis, an occupational disease, arising out of and in the course of his said employment" by relator as a fire fighter. The defenses, principally relied on, were failure on the part of respondent to give the employer statutory notice of claim and that the myocarditis or coronary sclerosis from which the employe died was not an occupational disease within the meaning of the workmen's compensation act, because it was not due to the nature of his employment.

The employe was employed by the city of Duluth as a fire fighter from October 15, 1916, until January 8, 1942. Shortly after midnight on August 31, 1941, an alarm, which proved to be a "stray" or false one, was received at the fire station where he was on duty. Apparently, he was sleeping at the time on the second floor. He arose and descended to the first floor to take his place on some fire apparatus to go to the fire, if there was one. Because of a weak spell, he was barely able to get to the apparatus. When it was discovered that the apparatus would not have to leave the fire hall, the men returned to the second floor to go to bed again. The employe climbed the stairs with some difficulty. When he got to the second floor he was gasping for breath. He then went to bed, where he gasped and breathed hard. He got up for a period of about ten minutes for relief. The captain in charge of the fire station was present during all these occurrences and occupied the bed next to employe's. After employe returned to his bed, the captain observed his condition and inquired, as it was his duty to do under the circumstances, whether there was anything he could do for him. The employe answered in the negative.

The employe performed no duties as a fire fighter after the occurrences mentioned. Beginning on the following day, he was hospitalized for about ten days. On September 30, 1941, he obtained temporary relief from the Duluth Firemen's Relief Association. On January 8, 1942, he resigned from the fire department. He died on August 25, 1942.

Such further statement of the facts as may be necessary will be made separately in connection with the questions raised here.

■ The employer contends that the employe and respondent, his dependent, failed to serve the statutory notice of the occurrence of the injury required by Minn. St. 1941, § 176.16 (Mason St. 1927, § 4280). The statute does not require written notice of death or injury where the employer has actual knowledge. Actual knowledge by an officer or agent standing in the employer's place for the time being is actual knowledge of the employer. Markoff v. Emeralite Surfacing Products Co. 190 Minn. 555, 252 N. W. 439

(actual knowledge of employer's superintendent acquired ten minutes after the injury) ; State ex rel. City of Northfield v. District Court, 131 Minn. 352, 155 N. W. 103, Ann. Cas. 1917D, 866 (actual knowledge of city's mayor and street commissioner acquired immediately after the injury). Actual knowledge of an officer in charge of a fire station of the happening of an accidental injury is actual knowledge on the part of the city. Salt Lake City v. Industrial Comm. 104 Utah 436, 140 P. (2d) 644 (lieutenant in charge of fire station). The finding that the city had actual knowledge of the employe's occupational disease is sustained by the evidence that the captain in charge of the fire station had actual knowledge thereof within ten minutes after its occurrence.

■ The employer claims that the commission erroneously tried the claim under Minn. St. 1941, § 176.66, instead of under L. 1943, c. 633. So far as here material, the 1941 statute provides that employes disabled from certain diseases due to the nature of and contracted while employed in certain processes of an industrial character, which are listed in a schedule (subd. 9) of corresponding specified diseases and processes and which are the occupational diseases and occupations covered by the statute, shall be entitled to compensation as upon the happening of an accidental injury. Subdivision 8 creates a presumption that, if the employe at or immediately before the date of disablement was employed in any of the processes mentioned and his disease is the corresponding one mentioned in the schedule, "the disease presumptively shall be deemed to have been due to the nature of that employment." The schedule (No. 24) lists the following occupational diseases as due to the hazards of fire fighting: "myocarditis, coronary sclerosis, and pneumonia or its sequelae in firemen," and, as the corresponding process, "Active duty with organized fire department."

The 1943 statute in express terms (§§ 5-6) repealed the subdivisions of the 1941 law which contained the schedules of diseases and processes and the presumption mentioned. In addition, it expressly provides in § 3(o) that prior legislative enumerations of occupational disease shall not entitle any employe afflicted with

such disease to a presumption that the same is in fact an occupational disease.

Relator's claim is that the procedural and evidentiary provisions of the 1943 statute control, with the consequence (1) that respondent was not entitled to a presumption that myocarditis or coronary sclerosis should be deemed to have been due to the nature of the employe's employment as a fire fighter; and (2) that the medical questions involved should have been referred to a medical board for decision instead of being decided by the commission. We think that the employer is entitled to raise only the question whether respondent was entitled to the presumption. The question with respect to decision by the medical board of the medical questions has been eliminated by relator's waiver of the right to a decision by that tribunal. At the opening of the hearing, in response to an inquiry by counsel who appeared for relator, the referee stated that the case would be tried under the 1941 statute and not under the 1943 act. After some discussion in which counsel insisted that the 1943 statute was applicable, the referee asked him "in what way" he claimed it applied. In answer to this inquiry, counsel stated that respondent was not entitled to the presumption under the 1941 statute, which he said is "one instance," and then stated: "Now, there are undoubtedly more, and if it is necessary to go into it, why, I should like a short time to reëxamine the act." A great deal of argument was had concerning the applicability of the presumption. Thereupon the hearing proceeded with no further mention of a reference of the medical questions to the medical board and without any demand for such a reference. The 1943 statute (§ 11) provides that each party may take the testimony of only one physician and that, when that has been done, the medical questions shall be referred to the medical board, therein provided, for decision. The parties entirely ignored the provisions of this section and proceeded upon the supposition that decision of medical questions, as well as others, should be made by the referee. Each party took the testimony of two physicians and not of one only. The hearing was adjourned from Duluth to Minneapolis to

enable the respondent to take the testimony of the second physician. All this was done voluntarily and without objection by the employer. The latter's counsel did not raise the points, other than the one relating to the presumption, which he indicated to the referee he might raise after he had reëxamined the act. The only permissible inference is that counsel had decided not to press the point that the medical questions should be referred to the medical board, and that thereby relator had waived the provisions of the 1943 law so far as they pertain to a reference of the medical questions to the medical board.

■ The next question is which statute governs. Relator contends that the 1943 statute is retroactive both as to the substantive rights of the parties and as to procedure and evidence. In answering the question, the following statutory rules of construction should be applied, viz.: (1) "No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature," § 645.21 (Mason St. 1944 Supp. § 10933-22); and (2) "The repeal of any law shall not affect any right accrued, any duty imposed, any penalty incurred, or any proceeding commenced, under or by virtue of the law repealed," § 645.35 (§ 10933-36). We think that both statutory rules of construction can be given full effect here.

The 1943 statute (§ 4, subd. 3) provides that disablement caused by occupational disease shall be treated as the happening of an accident; that death or disability resulting from occupational disease shall not be compensable unless such disease is due to the nature of the employment as defined in the statute "and was contracted therein within twelve months previous to the date of disablement; except in the case of silicosis or asbestosis, in which cases the disease must have been contracted within three years previous to the date of disablement." Subdivision 9 of § 4, which relator contends renders the statute retroactive in the respects claimed by it, provides:

"The provisions of this act *do* not apply to disability or death resulting from a disease contracted prior to the date on which this act takes effect, *unless such disease is determined to be an occupational disease under the terms of this act and was compensable at the time it was contracted or in cases of silicosis or asbestosis as herein provided."* (Italics indicate amendment.)

Subdivision 3 of § 4 is silent as to diseases contracted prior to its effective date. Subdivision 9 deals specifically with that problem in the language quoted.

The original act (Minn. St. 1941, § 176.66, subd. 11 [Mason St. 1927, § 4327(11), as amended, Mason St. 1940 Supp. § 4327(9)24]), provided that it shall not apply to disability or death resulting from a disease contracted prior to the date on which it took effect.

The statute clearly distinguishes between the contracting of an occupational disease and disablement caused by one. There is no provision in the 1943 statute making it retroactive as to disablement. Consequently, the statute must be construed as prospective in operation as to disablement. But there is language making it retroactive as to certain occupational diseases, and consequently it must be so construed as to them. A plain reason for the distinction appears from the history of the act. The 1941 statute applied to no case where the disease was contracted prior to its effective date. The 1943 statute does apply in certain cases, because many cases of disease were contracted while the 1941 law was in effect which would otherwise be without any remedy. Subdivision 9 was designed to cover such cases by making them compensable under the 1943 statute within the limits mentioned. The consequence, then, is that the statute covers disablement occurring after its effective date caused by disease contracted before that date within the limits mentioned.

Such a construction accords with the rule prescribed by § 645.21 that a statute shall not be construed as retroactive unless clearly and manifestly so intended by the legislature, because it gives a prospective operation to the statute in all respects where no con-

trary legislative intent is manifested and because it gives a retroactive effect to the statute only where such a legislative intent is manifest, *viz.*, that of a disease contracted prior to its effective date within the limits mentioned. Since the statute applies to a disease contracted prior to its effective date and not to a disablement so occurring, it applies to diseases occurring prior to its effective date which cause disablement afterward. That construction also accords with the rule of § 645.35 that a repeal of a statute shall not affect any right accrued, because, where both the disease was contracted and the disablement occurred prior to the effective date of the 1943 statute, the right to compensation had accrued and become vested under the 1941 statute.

As a result of such construction of the statute, the substantive rights of the parties are governed by the law in force at the time the right to compensation accrued. This is the same result which we have reached in similar cases by applying the same rules of construction prior to their enactment as statutory law. Roos v. City of Mankato, 199 Minn. 284, 271 N. W. 582; Herzog v. City of New Ulm, 199 Minn. 352, 272 N. W. 174; Warner v. Zaiser, 184 Minn. 598, 239 N. W. 761; Eberle v. Miller, 170 Minn. 207, 212 N. W. 190; Poupore v. Stone-Ordean-Wells Co. 132 Minn. 409, 157 N. W. 648. There is nothing in the 1943 statute showing that it should not operate prospectively as to matters of procedure and evidence. Such matters do not affect rights accrued. Therefore, as to such matters the statute operates prospectively. The result is that matters of procedure and evidence are governed by the law in force when the right to compensation is asserted. Roos v. City of Mankato, and Warner v. Zaiser, *supra.* As applied here, the result of such construction is that the substantive rights of the parties are controlled by the 1941 statute. Respondent's right to compensation for the employe's death accrued while the 1941 statute was in force, because during that time all the events occurred which gave rise to the right, *viz.*, the employe's death from occupational disease, the contraction by him of the disease, and due and statutory notice to relator of the disease and the death. The procedural

and evidentiary provisions governing the assertion of that right are those contained in the 1943 statute.

The presumption in question was a mere rule of evidence; it created a rebuttable presumption of causation under the circumstances mentioned that a particular occupational disease resulted from the corresponding industrial process. In practice, we have so treated it. See, Malzac v. Salmio, 206 Minn. 430, 288 N. W. 837; Funk v. Minnesota Min. & Mfg. Co. 192 Minn. 440, 256 N. W. 889; 22 Minn. L. Rev. 97. The repeal of the statute creating the presumption carried the presumption with it. A presumption created by statute may be abolished by repeal of the statute. There is no such thing as a vested right in a rule of evidence. Irwin v. Pierro, 44 Minn. 490, 47 N. W. 154. The saving provisions of § 645.35 do not save mere rules of evidence. Virginia & West Virginia Coal Co. v. Charles (4 Cir.) 254 F. 379; Wheelock v. Myers, 64 Kan. 47, 67 P. 632; 1 Horack's Sutherland, Statutory Construction (3 ed.) § 2047, note 7.

Respondent was not entitled to the benefit of the presumption, because it had been abolished prior to the hearing.

■ While it was error to accord to respondent the benefit of the statutory presumption created by the 1941 statute, the error does not require that the award be set aside if it resulted in no harm to relator. Of course, if an award results from the application of an erroneous rule of law, it cannot stand. For example, in Hogan v. Twin City Amusement Trust Estate, 155 Minn. 199, 193 N. W. 122, a decision that an employe was not entitled to an award resulting from applying to the evidence the erroneous rule that an employe must prove his case by "clear and satisfactory" evidence instead of by a fair preponderance thereof was set aside as one resulting from an application of an erroneous rule of law. To the same effect is Klika v. Independent School Dist. 161 Minn. 461, 202 N. W. 30. In such a case, as said in Securities and Exchange Comm. v. Chenery Corp. 318 U. S. 80, 87, 63 S. Ct. 454, 459, 87 L. ed. 626, 633: "The grounds upon which an administrative order

must be judged are those upon which the record discloses that its action was based."

Giving respondent the benefit of the presumption could have resulted in no possible prejudice to relator if the rules laid down in our decisions concerning presumptions were followed by the commission. For lack of affirmative showing to the contrary, we must assume that the commission observed these rules in determining the facts. It is well settled that a presumption is not evidence, but is rather a rule of law dictating decision on unopposed facts and shifting the burden of going forward with the evidence. Ryan v. Metropolitan L. Ins. Co. 206 Minn. 562, 289 N. W. 557. The presumption obtains until substantial proof to the contrary is introduced. Then it ceases and vanishes from the case. The case is then to be decided by the trier of fact the same as if the presumption had never existed. State v. One Buick Sedan Automobile, 216 Minn. 129, 12 N. W. (2d) 1; Roberts v. Metropolitan L. Ins. Co. 215 Minn. 300, 9 N. W. (2d) 730; Duff v. Bemidji Motor Service Co. 210 Minn. 456, 299 N. W. 196. Here, the employer introduced contradictory proof sufficient to overcome the presumption. Respondent introduced proof sufficient to sustain it. In short, the presumption, if applied according to our rules, was only a tentative rule of decision until displaced by the proofs to the contrary. At that juncture it had served the only purpose of a presumption— it had become *functus officio,* so to speak, and disappeared from the case. As said in the Ryan case (206 Minn. 570, 289 N. W. 561), "The presumption, as rule of law compelling decision, was dispelled by the evidence." The process of decision occurred after the presumption had vanished from the case. The fact was then determined upon all the evidence without considering the presumption as evidence. Hence, the decision cannot be said to be the result of applying the presumption to the evidence. Giving respondent the benefit of the presumption could not have caused any prejudice to the employer.

■ The contention is also made that there was a variance between the allegation of the claim petition that the employe's disease

was *myocarditis* and the proofs, which were to the effect that it was *coronary sclerosis*. The medical testimony was to the effect that, while myocarditis and coronary sclerosis are not synonymous, the former term is used as including the latter. Furthermore, relator was advised in advance of the hearing as to the precise nature of respondent's claims with respect to the disease and was prepared to meet them. Since the term myocarditis may include coronary sclerosis, there was in fact no variance. Under the circumstances, relator was not misled and could not have been prejudiced.

■ Lastly, it is claimed that the evidence does not sustain the findings. We do not deem it necessary to state the evidence to demonstrate that it sustains the findings. Anderson v. Farwell, Ozmun, Kirk & Co. 217 Minn. 110, 14 N. W. (2d) 311. Suffice to say that we have carefully examined the evidence,[2] which has taken about the same range as that in cases like Hiber v. City of St.

---

[2]For example, the testimony of Dr. Thomas Zisken supporting the finding was in part:

"There was no physical exertion connected with getting up and answering the alarm but yet there was a mental or emotional strain which acts the same way as a physical exertion would, and from that standpoint the exertion was related to the causing of his attack at that time; that is, the emotional strain of the sudden awakening and the getting up and the alarm, the excitement that occurs with it, brought on this attack of paroxysmal dyspnea which he complained of and which caused the condition that he had that day.

\* \* \* \* \*

"\* \* \* the occupations that I have mentioned so far are the ones in which emotional stress and strain are the factors which are considered responsible for the greater amount of coronary disease amongst these groups. For the same reason firemen also may be classed in this category because the work of the fireman is also one of emotional stress and strain, and it is the continued stress and strain, the continual hammering away at the arterial system that hastens the oncoming of coronary disease in these groups. In a study locally in the Twin Cities here in other cases of firemen in which I have given the same opinion before the Commission here, we found that 50% of the firemen that died in the Twin Cities in the last ten years died of coronary disease."

Paul, 219 Minn. 87, 16 N. W. (2d) 878; Kellerman v. City of St. Paul, 211 Minn. 351, 1 N. W. (2d) 378; Brown v. Minneapolis Board of Fire Underwriters, 210 Minn. 529, 299 N. W. 14; and Roos v. City of Mankato, 199 Minn. 284, 271 N. W. 582, where findings of death from occupational disease, as in the Kellerman case, and of death from accidental injury in the other cases cited were sustained; and, for the reasons stated in those cases, the findings here of death from occupational disease should be sustained.

Respondent is allowed $250 attorneys' fees in this court.

Writ discharged and decision affirmed.

