PHŒNIX HOSIERY COMPANY and another, Respondents, vs. INDUSTRIAL COMMISSION and another, Appellants.

*March 9—April 5, 1932.*

For the appellant Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondents there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Arthur B. Doe* of counsel, all of Milwaukee, and oral argument by *Mr. Doe.*

WICKHEM, J.   Angeline Buzek was injured on September 29, 1931, while in the employ of the Phœnix Hosiery Company at an average wage of $16 per week.   She continued in her employment up to and including October 2d, and from that day until October 8th, inclusive, she was totally disabled.   She returned to her regular employment on October 9th.   She was paid compensation for two days.   The Industrial Commission, however, ordered the payment of $1.87 for an additional day of disability.

The sole question involved is whether the term "fourth day" as used in sec. 102.43, Stats. 1931, means the fourth working day or the fourth calendar day.   Sec. 102.43 provides in part as follows:

"If the injury causes disability, an indemnity shall be due and payable as wages on the fourth day after the employee leaves work as the result of the injury, and weekly thereafter, during such disability, except that if the disability shall not continue longer than ten days from the date the employee leaves work as a result of the injury no indemnity whatever shall be recoverable for the first three days, which weekly indemnity shall be as follows: . . ."

It is the contention of the Industrial Commission upon this appeal that the provision in sec. 102.43 that an indem-

nity shall be due and payable as wages on the fourth day after the employee leaves work, means the fourth calendar day; that this is its normal and ordinary meaning, and that there is nothing in the act or in this section to compel or to justify giving to the term "fourth day" any but its normal, ordinary meaning. It is contended that the first three days after the accident were intended by the legislature to constitute a waiting period for the determination of the seriousness of the injury, and that this is the sole purpose of the waiting period. The fact that non-working days are a portion of the waiting period does not prevent them from furnishing a basis for determining the seriousness of the injury. It is pointed out that no other references in the act to "days" could be argued to mean anything but calendar days. It is further contended that weight should be given to the practical construction by the commission, and that while some inequalities will follow the construction contended for, they are not as serious as those which will follow a construction that working days are intended.

It is further contended by the appellant that the legislative history of the act indicates that the legislature intended the word "days" to refer to calendar days. Prior to 1931 the subject was dealt with in sec. 102.09, sub. (2) (d), ninth and tenth, which read as follows:

"Ninth. The weekly indemnity due on the eighth day after the employee leaves work as the result of the injury may be withheld until the twenty-second day after he so leaves work; if recovery from the disability shall then have occurred, such first weekly indemnity shall not be recoverable; if the disability still continues, it shall be added to the weekly indemnity due on said twenty-second day and be paid therewith.

"Tenth. If the period of disability does not last more than one week from the day the employee leaves work as a result of the injury, no indemnity whatever shall be recoverable."

It is claimed that the 1931 amendment merely intended to cut the period from one week to three days, and that it must be presumed, since it was clear that "eighth day" meant eighth calendar day in the 1929 provisions, that "fourth day" means fourth calendar day in the 1931 provisions.

On the other hand, respondents contend that sec. 102.43 contains within itself a clear indication that the legislature intended three working days; that when the section states that unless the disability shall continue longer than ten days from the date the employee leaves work no indemnity shall be recovered for the first three days, it is plain that the three days of the waiting period must be compensable or working days.

It is claimed that under the construction urged by the commission a workman who has the good fortune to have a Sunday fall within the three-day waiting period will receive one more day of compensation than the workman whose three days of waiting do not include a Sunday. It is urged that in effect this gives to the first class of workmen an extra day of compensation, and, further, that in effect it results in compensating the workman for the Sunday. It is also urged that if the fourth day fell on Sunday no one would contend that the compensation was due and payable on that day, and that consequently "fourth day" must mean the fourth working day.

It is our conclusion that the construction contended for by respondents is correct. The purpose of such provisions as are here involved is to prevent malingering. In the report of the special committee on industrial insurance, submitted to the governor and legislature on January 10, 1911, the following comments were made upon provisions for a waiting period in the original act:

"The object of this is to prevent malingering. A man receiving a slight injury that might disable him for three

or four days might pretend to be disabled for a week in order to receive the first week's indemnity. But it is assumed that he would not lay up for four weeks in order to get this first week's indemnity. This preserves to those who are seriously injured the right to receive their compensation from date of the injury. As medical and surgical treatment are furnished in all cases, it seems only fair that in minor cases not causing disability for a week, compensation should not be recovered."

This report indicates the purpose and method of such statutes. As evidenced by sec. 102.43 and its forerunners, the method is to set up two periods of time from the date of the disability. The first and shorter period is not to be compensated for unless the disability continues to the end of the second or longer period. If the disability so continues, the first period is to be recaptured and compensation given. Hence, the waiting period is in reality the longer period, that is, twenty-two days under the Statutes of 1929, and ten days under the law as now in force. This period measures the contingency upon which compensation for the shorter period depends, and establishes the time when such compensation becomes due, if at all. It furnishes the principal obstruction to malingering, and the standard by which the seriousness of the injury may be determined. The shorter period is one for which compensation is given or withheld, according to the length of the disability. Hence, we think the statute, when it deals with the shorter period, means to refer to days which, except for the contingency necessary to carry out the general purposes of the section, would be compensable. While it is true that "day" ordinarily means calendar day, we think the sentence-construction of the section, taken in connection with its purpose and method, indicates that compensable day is meant. The fact that it is provided that "no indemnity whatever shall be recoverable for the *first three days*" is quite persuasive of this intention. On the other hand, we think the term "ten

days" clearly means ten calendar days, and that several of the contentions of the appellants apply validly to this period. This is a period of waiting for the purpose of determining the seriousness of the injury and to put a check upon malingering. There appears to be no reason to give to the term "ten days" any but its ordinary, usual meaning.

We are fortified in our conclusion as to the meaning of the section by the fact that such a construction preserves an equality between different applicants for compensation. We think it cannot have been the intention of the legislature that compensation should vary as between applicants according to the day on which the disability should happen to occur. The legislative history of the section, except as it furnishes the general objective of such provisions, is not of any service in construing this section, for the reason that, so long as the shorter period was a week, the problem presented by this case could never arise, and there was no need for treating the term "eighth day" as anything but a calendar day.

It is suggested that the construction given to sec. 102.43 by the trial court, and sustained here, results in greater inequalities than it obviates. It is suggested that an employee might be injured on a Saturday, just prior to the annual two weeks' shut-down of the plant, and that under the construction of the trial court he would be deprived of his right to obtain compensation until the plant should have resumed activities, so that three full working days could elapse. We think this result does not follow the construction. We think the word "days" in reference to the shorter period refers to compensable days. If, under a particular contract of employment upon a seven-day basis, Sunday should constitute a compensable day, it is included within the three days. In the event of the shut-down immediately following the injury, in the plant in which the injured workman is employed, the compensable character of the days is not affected at all. The workman has been deprived of his

opportunity to work and earn upon days that are normally open to work in industry, and the fact that such work was not forthcoming in the plant of the company which employed him at the time of the injury would not affect the compensable character of the days during which his disability continued.

For the foregoing reasons, judgment must be affirmed.

*By the Court.*—Judgment affirmed.

FRITZ, J., dissents.