# IVER B. SOKNESS v. CITY OF VIRGINIA AND ANOTHER.[1]

May 11, 1950.

No. 35,145.

*Stone, Manthey & Carey,* for relators.
*John H. Louisell,* for respondent.

PETERSON, JUSTICE.

Certiorari by the employer and its insurer to review an award of compensation.

The questions for decision are:

(1) Whether evidence that a coronary thrombosis was caused by extreme physical exertion and excitement sustains a finding of accidental injury within the meaning of the workmen's compensation act; and

---

[1]Reported in 42 N. W. (2d) 551.

(2) Whether evidence of actual knowledge on the part of members of the police and fire commission of a city and of officials of the police department of a policeman's injury is knowledge of the city within the meaning of such act.

Employe, a police officer of the city of Virginia, had been such for over 14 years at the time of the occurrence which he claims was an accidental injury. He had served in different capacities such as squad car driver, foot patrolman, acting captain, and again as squad car driver.

While the evidence as to the occurrence, claimed by employe to have caused his disability, as to causal connection between the occurrence and the disability, and as to notice or knowledge on the part of the employer of the alleged accidental injury is conflicting, we shall state the evidence in the view most favorable to the findings of the commission, for the reason that it is practically conceded that on review here the evidence is to be so viewed by this court.

Early in the morning of September 23, 1946, while driving a squad car, employe went to an automobile collision on the Gilbert road. En route, he picked up his superior officer, Lieutenant Alex Niemi of the city police department. Two automobiles had collided. One, a Chevrolet operated by John Hautala, had collided with another, an Oldsmobile operated by Lloyd Kantola. The Hautala car stood on the pavement in such a position as to block traffic. Both of its front wheels were turned inward—the left one so as to be parallel with the bumper—and the grillwork in front had been pushed back against the motor so it could not be operated. Because the car in that condition could not be driven off the pavement and because of the condition of the front wheels it could not be pushed off, it was necessary to work the front part thereof up and down while backing the car. This was done by employe and Kantola and involved extreme physical exertion and excitement. While this was being done, Lieutenant Niemi had gone forward to set out flares. Afterward, employe took Hautala, Kantola, and two occupants of the latter's car to the police station. When they arrived at the police

station employe was still heated from the exertion incident to moving the Hautala car off the pavement and excited. As a consequence, another officer made out the accident report which employe normally would have done. Employe then went to a garage, where he experienced severe pain in the chest, shoulder, and arm. The pain continued throughout the night. Although he remained on his shift, which ended at eight o'clock in the morning, he simply "killed time" after 6:30 a.m. Another officer assisted him with his work. Employe took some soda to relieve his condition, but without success.

Later, after employe had returned to his home, his condition became worse. A physician was called to his home to attend him. Afterward, he was taken to the Virginia Municipal Hospital in a police department car by Hjalmer Maki, a police lieutenant.

Employe did not give the city written notice of his injury within 90 days after it occurred, but he did within such time inform numerous persons connected with the city government of Virginia relative to the facts concerning his disability resulting from the occurrence on the Gilbert road. Among them were the chief of police, the officer in charge of records of injury cases, whose duties included making reports to the city's police and fire commission, the assistant chief of police, two lieutenants of police, and some of the members of the commission. Others, also, were so informed.

At the trial there was medical testimony of employe's physician and of two outstanding medical experts to the effect that he had suffered a coronary thrombosis, which caused disability, and that the condition was caused by extreme physical exertion and excitement incident to the events occurring on the Gilbert road in connection with the Hautala-Kantola automobile collision. Employer presented testimony of a similar medical expert to the contrary.

■ A coronary thrombosis sustained by an employe as a consequence of extreme physical exertion and excitement is an accidental injury within the meaning of M. S. A. 176.01, subd. 9, defining an accident as: .

"* * * an unexpected or unforeseen event, happening suddenly and violently, with or without human fault, and producing at the time injury to the physical structure of the body, * * *."

Kemling v. Armour & Co. 222 Minn. 397, 24 N. W. (2d) 842. See, 34 Minn. L. Rev. 377.

In the Kemling case our prior decisions are cited and reviewed. There is no occasion now to again go over the ground so well covered there. In the particular case, as we there held, the question is one of fact for the decision of the commission, as it was here.

■ In order for a disability to be compensable, the employer must obtain knowledge or be given written notice thereof within 90 days after the occurrence of the injury. § 176.16. Here, no written notice was given. But we think that the employer obtained actual knowledge of the injury within 90 days after it occurred. Where the officers of a city exercising superior authority over other officers and employes obtain actual knowledge of an accidental injury to the latter, such knowledge is knowledge by the city itself. Ogren v. City of Duluth, 219 Minn. 555, 18 N. W. (2d) 535. In the Ogren case, the officer obtaining the knowledge was a captain of the fire department in charge of a fire station where a fireman as a result of extreme exertion and excitement suffered a heart attack from which he later died. Under the principles of that case, the knowledge here of the chief of police and the other police officials mentioned was knowledge by the city.

Respondent is allowed $250 attorney's fees in this court.

Writ discharged and decision affirmed.