JOVO JURICH v. CLEVELAND-CLIFFS IRON COMPANY.[1]

February 2, 1951.

No. 35,236.

[1]Reported in 46 N. W. (2d) 237.

*Gannon & Morton,* for relator.
*John H. Louisell,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Certiorari to review the decision of the industrial commission affirming an award of the referee.

Employe, Jovo Jurich, filed a claim petition with the industrial commission for injuries allegedly arising out of and in the course of his employment as an underground miner for relator, Cleveland-Cliffs Iron Company. The answer of employer, a self-insurer, specifically denied that an accidental injury within the meaning of the workmen's compensation act had occurred.

The matter came on for hearing before a referee for the industrial commission, who found that employe had suffered an

accidental injury on October 3, 1948, arising out of and in the course of his employment and that employer had statutory notice and knowledge of the injury; that as a result of the accidental injury employe became temporarily totally disabled on October 8, 1948, and continued to be so disabled up to and including December 9 of that year; and that as a further result of the injury employe suffered a 20 percent permanent partial disability of his back. Pursuant to these findings, the referee determined that employe was entitled to compensation covering nine weeks of temporary total disability, amounting to $243, and 60 weeks of permanent partial disability, amounting to $1,620, or a total compensation of $1,863. Employer was ordered also to pay medical expenses incurred by employe in the sum of $89; to furnish employe with a back brace; and to pay the sum of $32.40 to the special compensation fund.

Employer appealed from the decision of the referee to the industrial commission upon the ground that the findings of fact and decision were not in conformity with the workmen's compensation act and were unwarranted by the evidence; and that the referee erred in sustaining employe's objection to testimony and to employer's offer of proof that some time subsequent to October 6, 1948, and prior to the commencement of this proceeding employe submitted an application to an insurance company for sick benefits which he was entitled to receive in nonindustrial cases. In this application, according to employer, employe claimed that his disability was caused by sickness and was not an accidental injury, as claimed in his petition to the industrial commission, and that he received and retained insurance in a substantial amount ($260) based upon his claim for sickness rather than injury. The findings and determination of the referee were affirmed by the industrial commission, one commissioner dissenting.

Employer then petitioned the commission to vacate and set aside the award and decision of the commission and to grant a new hearing. Briefly, the grounds for this petition were that the findings and decision of the referee, as affirmed by the industrial

commission, were contrary to law and were not justified by the evidence; that employe had waived all claims or rights to compensation by applying for and receiving sick benefits under the group insurance policy; and that the referee erred in refusing employer's offer of proof to show that employe had sought and received these insurance benefits in lieu of proceeding with a claim under the compensation act. This petition was denied by the commission, whereupon employer brought these proceedings.

Upon review we are concerned primarily with these questions:

(1) Are the findings and decision of the commission justified by the evidence?

(2) Was it error to sustain employe's objection to the admission of testimony and offer of proof by employer?

■ In connection with the first question, we have previously said that it is the well-established policy of this court, in reviewing the findings of the industrial commission, not to determine whether on the facts the decision of the commission is correct or even preferable to another, but, rather, only to determine whether the findings have sufficient basis of inference reasonably to be drawn from the facts. The same policy has been expressed by this court in cases saying that the findings of the commission are entitled to very great weight and that this court will not disturb them unless they are manifestly contrary to the evidence; and that if, after an impartial consideration of the evidence or of the inferences which may fairly and reasonably be drawn therefrom, reasonable minds might reach different conclusions upon the questions, the findings must stand. Tometz v. Biwabik Min. Co. 171 Minn. 302, 213 N. W. 897; Fisher v. Fisher, 226 Minn. 171, 32 N. W. (2d) 424; 6 Dunnell, Dig. & Supp. § 10426. It is also the established policy that the workmen's compensation act should receive a broad and liberal construction in the interests of workmen to carry out its policy. 6 Dunnell, Dig. & Supp. § 10385. The evidence must be viewed in the light most favorable to the findings of the industrial commission in

determining whether the facts and inferences to be drawn from them sustain these findings. Schmoll v. J. W. Craig Co. 228 Minn. 429, 37 N. W. (2d) 539; Eischen v. Fairmont Canning Co. 225 Minn. 295, 30 N. W. (2d) 586; Fisher v. Fisher, *supra;* Burke v. B. F. Nelson Mfg. Co. 219 Minn. 381, 18 N. W. (2d) 121.

■ We have a somewhat unusual situation in the case before us, in that the only proof that employe sustained the injuries claimed by him as a result of the alleged accident on October 3 or 4, 1948, is his own testimony. That in itself would not defeat his claim, since we have already said in Anderson v. Coca Cola Bottling Co. 190 Minn. 125, 251 N. W. 3, that it is not necessary that there be an eyewitness to an accident.

Employe claims that after the accident he called a fellow workman nearby and told him that he had sprained his back. This workman, who appears to be no longer in the employ of employer, was not called as a witness. Employe claims also that the day following the accident he reported it to Gancho Cristoff, one of employer's foremen. Cristoff denied this and testified that although he had seen employe every day—sometimes three or four times a day—up to October 7, he (employe) made no complaint to him about being hurt while rolling a stone or rock, or anything of the kind. He further testified that when employe quit work at that time he did not know why and that employe had quit on previous occasions because he claimed that he had a sore back or for other reasons, "and sometimes don't say nothing." Cristoff also said that the first time he learned that employe was making a claim for an injury or accident was about two weeks later when George R. Whittington, safety man for employer, so informed him.

Whittington testified that he did not receive any report of an accident or injury from employe when he quit working in the mine in October 1948 and that the first he learned that there was a claim on the part of employe arising out of an accident was in the early part of November, when he received a report from Dr. B. F. Flynn of the Adams Clinic. He said that there

was some reference in that report to a claim on the part of employe that he was injured sometime in the early part of October. Whittington said that after receiving this report he visited the mine and interviewed the shift bosses and mining captain as to why he had not received a foreman's report of the accident, but that "Not anyone in the mine had any knowledge of an accident to the man." He said that he then visited employe in Chisholm sometime in November; that he located him in a pool hall and asked him why he had not returned to work; and that employe said that he had a sore back which he had received while lifting a rock at the mine. He claims that he then asked employe if he had reported the matter at the mine and that employe said he had not.

Employe testified that he was injured at about 2 p. m. on October 3 or 4, 1948, after rolling or moving a half-ton chunk of ore or rock with his hands while working in employer's underground mine; that he continued to work until 3:30 that afternoon; and that he did not see a doctor that day and did not put in a report of the accident. He said that he continued to work for the next two days, but that he reported to employer's foreman the day after the accident that it had occurred. This was denied by the foreman. Employe claimed that he first called Dr. Clarence Jacobson to his room on Friday, October 8, 1948, and told him that he had a sore back, but that he said nothing to the doctor at that time about hurting his back while "rolling this chunk"; that the doctor gave him some pills and left; and that he stayed in his room until the following Monday and then went to the Adams Clinic at Chisholm. He did not know the name of the doctor he saw that day, but said that the latter prescribed a plaster and some pills. He claimed that he told the doctor the same things he had reported to his "boss" about rolling the chunk of ore. He said that after that he kept the plaster on for eight or nine days and then went back to see the same doctor. Shortly afterward he went to the Adams Clinic at Hibbing, where X rays were taken. He kept visiting the doctor there

the next week, and then went back to Chisholm and saw the same doctor, whose name he did not know (apparently Dr. Flynn), who put a plaster on his back and gave him some more pills. About seven days afterward he again saw Dr. Jacobson. The last time he consulted with that doctor was about December 15, 1948, and after that he received treatments from Dr. S. H. Peterson.

Dr. Jacobson testified that he was associated with the Adams Clinic at Chisholm and Hibbing and that they did work for the employes of employer; that he saw employe professionally on October 8, 1948, at the latter's room, when he complained of a pain in his lower back; and that an examination revealed a spasm of the back muscles, which appeared to the doctor at that time to be a low back pain probably caused by some infection, since employe did not tell the doctor at that time of any injury.

The principal conflict between the parties here is whether employe suffered an injury on or about October 3 or 4 or whether he became ill about that time. Employe contended all along that he was injured, and the referee so found. However, on January 11, 1949, employe signed an application to the Metropolitan Life Insurance Company for group insurance benefits under a policy which provided for payments to him for sickness and accident not sustained while on the job. Thereafter he was paid $260 for a period of 13 weeks covered under this policy. When questioned whether he claimed that he was disabled by sickness from November 1, 1948, as stated in his application for insurance benefits, he said that he did not know what it was that he signed—that the doctor wrote in something, but that he (employe) did not put in sickness. "I put it that I got hurt in the mines." On February 16, 1949, employe petitioned the industrial commission for compensation, alleging that on October 3, 1948, he was injured while in the employ of employer by an accident arising out of and in the course of his employment. Employer raises the question that on that particular day the mines were closed, but a review of employe's testimony discloses that he said the accident occurred on October 3 or 4. There appears to be nothing in the

record wherein employe himself claims that he was injured on October 3 or 4 *and also* became ill after that.

Employer's chief clerk, M. J. Donovan, testified as to employe's employment record from March 15, 1947, until April 15, 1949, and in a summary way said that employe "was off eleven days" during the period ending March 31, 1947, and that the information they had at the mine was that he was sick; that for the two-week pay period ending September 15, 1947, he lost six days; for the period ending September 30, 1947, seven days; for the period ending January 15, 1948, nine days; for the period ending February 29, 1948, one day; and for the period ending May 15, 1948, one day, reasons unknown. He further said that for the periods ending May 31, 1948, employe lost six days; June 30, 1948, one day; July 31, 1948, two days; September 15, 1948, one day; and October 15, 1948, seven days. He testified that the record indicated that the reason for employe's absence from work in the recent months prior to the hearing was sickness. The witness then produced a copy of the application for insurance benefits submitted by employe in January 1949 and said that the original went to the insurance company, but that employer made a copy for its records. He explained that the copy had been drawn on a new form which had been issued by the company, but that the answers to the questions were identical with those on the old form.

It appears that this insurance application was in three parts. The first part was filled in by employe, the second part by employer, and the third part by the attending physician. Employer then offered in evidence exhibit 4, consisting of two pages, and employe objected. Employer argued that its purpose in offering the exhibit was to show that employe had claimed illness under the sickness insurance policy to the point of collecting on it, and that according to the application for the sickness benefit employe was not treating his claim as a compensable one under the workmen's compensation act, but rather a claim for sickness under the insurance policy. The referee sustained employe's objections, commenting that there was already oral testimony in

the record relative to employe's receiving benefits under the group health insurance policy, but that, inasmuch as employe was "unschooled," the referee did not feel that the exhibit had sufficient foundation for him to receive it. Employer then offered to prove by its chief clerk, M. J. Donovan, that on January 11, 1949, employe signed a statement of claim for sickness and accident weekly benefits on employer's claim No. 9, which read as follows:

"Employe's full name: Jovo Jurich. Age: 61. Present address: 110 Central Avenue South, Chisholm, Minnesota. Date you were first disabled by this sickness or injury: 11-1-48. On what date were you first treated by a physician: 10-25, 11-1, 2, 8, 10, 22, 29, 12-3, 9, and 5, and in parenthesis (diathermy treatments.) If an accident was involved, answer the following: When did the accident happen? Date, blank. At, blank. A. M. or P. M. (3). Were you at work when the accident happened? Blank. (c). Give a brief description of the accident. Blank. Dated: 1-11-49."

Employer further offered to prove by its chief clerk that the part of the form to be completed by it was signed by Arni E. Maki, mine clerk for the Agnew branch mine, on January 18, 1949, and read as follows:

"Employe's name: Jovo Jurich. Serial number: AG-3370. Group number: 7719-G. (2). Amount of weekly benefit: $20.00. Date this benefit effective: 9-1-47. (3). Average weekly wage or salary: Entitled to class II benefits. (4). If this coverage has been cancelled, give date and reason: Blank. (5). a. Date last worked: Worked October 7, 1948. c. Has this claim been considered in connection with workmen's compensation coverage? Answer: No. If yes, what is the present status of the compensation claim? Blank. (7). Have you any information which might assist this company in the consideration of the claim? No."

Employer also offered to prove that the statement on the back of the form, completed and signed by the attending physician, Dr. Clarence Jacobson, on January 11, 1949, being the same date as it was signed by employe, was as follows:

"Name of patient: Joe Jurich. Age: 61. (2). Date of first treatment for this disability: October 8, 1948. Date of last treatment: January 10, 1949. (3). Diagnosis (including complications): Hypertrophic arthritis, lumbar spine. (4). If surgery was performed or is contemplated, give nature and date: Blank. (5). Patient was physically unable to work from October 8, 1948. (6). Answer a or b, whichever applies: a. The patient was able to return to work: Blank. b. The patient may be able to resume work: Indefinite. (7). Is this disability the result of the patient's occupation: Answer, no."

The supplementary report of the attending physician, dated February 1, 1949, shows that Dr. Clarence Jacobson was first consulted on account of the present injury or sickness on October 8, 1948; that he was treating the patient then and weekly; that on February 1, 1949, he was given the last treatment; that the cause of disability was arthritis of the lumbar spine; that the patient was not confined to a hospital; that he is apparently unable physically to work; and that the time when he will be able to work is indefinite.

Employe objected to this offer, and the objection was sustained by the referee.

We believe, under the facts and circumstances here, involving a dispute on the questions of the injury and the illness of employe, that the referee should have received in evidence the application made by employe for benefits under the group insurance policy. The policy provided for payments for sickness and accident not sustained while on the job. It took care of disabilities not covered by the compensation act. However, the offer was made, according to employer's brief (a) as a contradictory statement impeaching employe's testimony as to an accident in the mine; (b) as an admission which it claims is evidence in support of its contention that there was no accident in the mine; and (c) as a statement contradictory to Dr. Jacobson's testimony that employe suffered from a strain.

Although we consider that the referee erred in denying employer's offer of proof, we do not believe that the error was sufficiently prejudicial to justify the remand of the case to the commission with instructions to receive the application and offer of proof. Practically everything found in the exhibit was testified to. Employe admitted signing the application; so did the physician. Reception of the exhibit would have added nothing that was not already before the referee and the commission, except that it would have been in writing. If employe and his physician witness in the opinion of the referee and the commission had not been sufficiently impeached by the other testimony, or if the fact that the employe admitted that he signed the application did not convince the referee or the commission that there was no accident in the mine, it would seem that the application itself would not have affected the result.

■ Employer assigns as error that the industrial commission committed an error of law in rendering its decision on February 10, 1950, although only two of its members signed it. It argues in its brief that the decision of the commission was a split decision, with one commissioner for affirmance and one dissenting. It further argues that the third commissioner did not join in the decision, although he sat at the hearing, and that the legal consequence of such a decision is a nullity.

While it appears from the printed record that the decision of the commission on appeal from the findings of the referee was signed by only one commissioner and dissented to by another, an examination of the original record discloses the signatures of two commissioners for affirmance and one commissioner dissenting. This court cannot go beyond the original record in the matter, even though a copy of the decision of the commission on appeal mailed to the respective parties may show the signatures of only two of the commissioners.

Employe is allowed $250 attorney's fees and costs in this court. Affirmed.