BENTTE RINNE v. W. C. GRIFFIS COMPANY AND ANOTHER.[1]

May 4, 1951.

No. 35,361.

[1]Reported in 47 N. W. (2d) 872.

*John H. Louisell*, for relator.

*Stone, Manthey & Carey*, for respondents.

FRANK T. GALLAGHER, JUSTICE.

Certiorari to review an order of the industrial commission reversing the determination of a referee awarding compensation to relator.

Relator was employed by W. C. Griffis Company from August 7, 1948, until November 16 or 17, 1948, as a tractor and scraper operator while employer was engaged in widening highway No. 169 between Calumet and Keewatin, Minnesota. On October 5, 1948, employe was operating a tractor with a scraper behind it. Because of the nature of the work, it was necessary for him to drive this machinery up and down the banks on the side of the road. On the day in question, while climbing a steep bank, the motor in the tractor he was driving rose to a point almost perpendicular with the frame. This was the result of a missing pony spring which attached the motor of the tractor to the framework. Fearing that the machine might topple over backward, employe jumped from the machine onto the slope which he had been climbing. He landed on his back on sandy and rocky ground and skidded down the slope to a point behind and to the side of the scraper which he had been pulling. The foreman of the crew, who was standing some 75 feet from the tractor at the time, saw employe jump from the tractor, but after the land-

ing his view was cut off by the scraper and the intervening slope. Employe testified that after jumping he walked around and that "it didn't seem like I was hurt too bad." After pulling the tractor down off the slope with another tractor, he resumed work, although he testified at the hearing that his back was sore and that its soreness increased during the remainder of that day. He continued to work until October 18, 1948, when he consulted a doctor. The doctor advised him not to work for a few days, and, following that advice, he remained away from work three or four days. He resumed work on either October 23 or 24 and continued without interruption until November 16 or 17, 1948.

Employe testified at the hearing that following the accident his back continued "getting sorer every day until finally I couldn't straighten up." He said that a short time before he went to the doctor on October 18 the pain in his back began to radiate down his right leg and that this condition got progressively worse. Kenneth D. Schumar, the foreman on the job, testified that during the period from October 5 to November 16 or 17 employe seemed to walk in a sort of stooped position, and he testified also that employe complained to him about his back hurting, but that he did not mention the fact that the accident of October 5 was responsible. Employe complained also about his sore back to Hugo Lindquist, a coemploye. Lindquist testified that he assisted employe toward the end of the job because of his complaints, and it was also his observation that employe seemed to be bothered by his back.

About two weeks prior to November 16, 1948, employer finished the highway job on which they had been working and moved the crew, including employe, to a washing-plant dam job between Coleraine and Bovey. About November 16 or 17, 1948, the weather turned cold and that job was shut down. Employer then offered employe another job, which he refused, and he was unemployed from that date until he went to work for another employer on June 28, 1949.

From November 1948 until January 1949, employe sought medical attention more or less regularly in an attempt to obtain relief from

the pain in his back and legs. It was sometime in January 1949 that his doctor informed him that he was suffering from either a ruptured or a slipped disc in his back. While employe said that he informed employer by telephone of this condition about January 25 or 26, 1949, "or some place in the neighborhood," the record shows that employer made a report of the accident to the insurer by letter dated January 24, 1949. The insurer investigated the report and apparently denied liability thereunder. Employe filed a claim petition with the industrial commission on March 1, 1949, which petition came on for hearing before a referee on June 29, 1949.

The referee found, among other things, that employe had suffered an accidental injury arising out of and in the course of his employment on October 5, 1948; that employer had due and statutory notice and knowledge of the accidental injury; and that as a result of his injury employe was temporarily and totally disabled on October 19, 20, 21, and 23, 1948, and was again temporarily totally disabled from November 18 to and including December 1, 1948. The referee further found that as a result of the injury employe suffered a ten percent permanent partial disability to his back, and ordered compensation paid for the appropriate amount.

Upon appeal to the industrial commission, the determination of the referee was reversed in part, the commission finding that "the employer did not have actual knowledge nor did the employe give it written notice of the occurrence of said injury within 90 days after the occurrence thereof." It also found that employe was temporarily totally disabled on October 19, 20, 21, and 23, 1948, and from November 7, 1948, to and including April 30, 1949, and was partially disabled from May 1, 1949, to and including June 17, 1949, and accordingly denied the claim petition.

The case is now before this court on a writ of certiorari, the only assignments of error being that the commission erred in failing and refusing to adopt the findings of the referee that employer had due and statutory notice and knowledge of the accidental injury and in refusing to award compensation and other benefits provided by the workmen's compensation act.

The legal question raised by employe under the facts and circumstances here is: Should the industrial commission have found as a matter of law that employer had statutory notice and knowledge?

■ M. S. A. 176.16 provides in part:

"Unless the employer shall have actual knowledge of the occurrence of the injury, or unless the injured workman, or a dependent, or some one in behalf of either, shall give notice thereof to the employer in writing within 14 days after the occurrence of the injury, then no compensation shall be due until such notice is given or knowledge obtained. * * * Unless knowledge be obtained or notice given within 90 days after the occurrence of the injury, no compensation shall be allowed."

The purpose of the requirement of actual knowledge or notice is to permit the employer to make such investigation as is necessary to determine liability as to a claim. Miller v. Peterson Const. Co. 229 Minn. 22, 38 N. W. (2d) 48. It is conceded that employer received no formal notice of the injury between the time of its occurrence on October 5, 1948, and "some place in the neighborhood" of January 25, 1949, when employe claims to have advised employer by telephone. It is apparent also that the latter date is beyond the 90-day limit permitted by the statute. It is employe's contention, however, that employer had "actual knowledge of the occurrence of the injury" within the meaning of the statute, in view of the fact that employer's foreman, Schumar, saw employe jump from the tractor and thus sustain his injury; therefore, that it becomes immaterial whether formal notice of the injury was ever given or not.

It seems well settled in this state that knowledge of an injury to an employe gained by a foreman or superintendent of the employer is imputed to the employer from our decisions in Markoff v. Emeralite Surfacing Products Co. 190 Minn. 555, 252 N. W. 439; Ogren v. City of Duluth, 219 Minn. 555, 18 N. W. (2d) 535; Miller v. Peterson Const. Co. 229 Minn. 22, 38 N. W. (2d) 48; Sokness v. City of Virginia, 231 Minn. 215, 42 N. W. (2d) 551.

This court said in the Ogren case (219 Minn. 557, 18 N. W. [2d] 537):

"* * * The statute does not require written notice of death or injury where the employer has actual knowledge. Actual knowledge by an officer or agent standing in the employer's place for the time being is actual knowledge of the employer."

This construction is in line with the interpretation given similar statutes by other jurisdictions. See, Annotation, 145 A.L.R. 1289.

"Actual knowledge" within the meaning of the statute has been said to be "information on which to base inquiries if he [employer] so desires." Matter of Finch v. Buffalo Envelope Co. 218 App. Div. 31, 35, 217 N. Y. S. 744, 747 (affirmed, 244 N. Y. 557, 155 N. E. 895); and, at a minimum, it is information such as a reasonable man would usually act upon in the ordinary course of human affairs. Walkden's Case, 237 Mass. 115, 129 N. E. 396, and West's Case, 313 Mass. 146, 46 N. E. (2d) 760, cited with approval in Nelson v. Reid & Wackman, 228 Minn. 137, 141, 36 N. W. (2d) 544, 546.

At the hearing before the referee, Schumar, employer's foreman, testified that he had observed employe jump from his machine; but he testified also that he had seen others, including employe, jump from their machines, and that, beyond the fact that the tractor from which employe jumped had a missing spring, there was nothing particularly uncommon about the practice. He testified that employe had come to him and "talked about his back hurting and said that he was going to see if he could tough it out and finally he came one morning and said that he didn't think that he could make it. That he was going to rest his back for a few days." When asked whether employe had said anything about an injury on the job in addition to telling about his back trouble, Schumar flatly testified: "No, sir. I don't remember anything about that." He also testified that up until the time when employe spoke to him about his back trouble his work had been satisfactory and his attendance upon the job regular. He testified further that he had observed after the accident that employe "seemed to walk in sort

of a stooped position" and that he had never reported the incident which caused the injury.

Nowhere in the record is there testimony by employe that he told the foreman that he had injured his back as a result of jumping from the tractor. Neither is there any testimony on behalf of employe that the foreman knew that employe's condition was caused by the injury received when he jumped from the tractor. Employer, W. C. Griffis, testified that, when he offered a further job to employe in November 1948 and was refused, employe said nothing about the injury being the cause of his refusal. Employe himself testified that he told Griffis at that time that he did not feel that he could stand it, that unless he felt better he could not go, but there is nothing in the record to indicate that he said the injury was the cause of his condition.

In reviewing an order or determination of an administrative board, the supreme court will go no further than to determine whether the evidence was such that the board might reasonably make the order or determination which it made. Hamlin v. The Coolerator Co. 227 Minn. 437, 35 N. W. (2d) 616; Nelson v. Reid & Wackman, 228 Minn. 137, 36 N. W. (2d) 544. The findings of the industrial commission are entitled to great weight, and this court will not disturb them unless they are manifestly contrary to the evidence; and if, after an impartial consideration of the evidence and of the inferences which may fairly and reasonably be drawn therefrom, reasonable minds might reach different conclusions upon the question, the findings must stand. Peterson v. State (Operating University Hospitals), 234 Minn. 81, 47 N. W. (2d) 760; Tometz v. Biwabik Min. Co. 171 Minn. 302, 213 N. W. 897; Fisher v. Fisher, 226 Minn. 171, 32 N. W. (2d) 424; 6 Dunnell, Dig. & Supp. § 10426.

It is our opinion under the facts and circumstances here that there was evidence from which the commission could reasonably make the order and decision which it made and that its decision must be affirmed.

▪ ■ It is employe's further contention that, regardless of whether employer had "actual knowledge" of the injury within the meaning

of the statute, the telephone notice of the injury given to employer on or about January 25, 1949, was within the statutory 90-day period by virtue of the so-called trivial-injury rule. This rule and the consequences of it upon the problem of notice was stated by this court in Bruggeman v. Ford Motor Co. 225 Minn. 427, 429, 30 N. W. (2d) 711, 712, to be as follows:

"* * * where an employe in the course of his employment sustains an apparently trivial injury which does not result in present disability and which no person of ordinary prudence, similarly situated, would reasonably anticipate as likely to cause future disability, the time for giving notice of the occurrence of the injury to the employer, pursuant to § 176.16, runs from the time when it becomes reasonably apparent that such injury has resulted in, or is likely to cause, compensable disability."

This court further said in that case that it is a fact question to be determined by the trier of fact as to whether a case comes within such rule.

Two cases will serve to indicate the limits of the trivial-injury rule and its application to the problem of notice and will serve to place this case in its proper perspective. In Clausen v. Minnesota Steel Co. 186 Minn. 80, 242 N. W. 397, an employe in the course of his employment struck the knuckle of his right hand with a sledge. Upon examination, the knuckle showed some abrasion but no bleeding, and the employe continued to work. A certain soreness remained in the injured member whenever pressure was applied to it, but the employe deemed it trivial and did not report it. Some three or four months later his hand began to pain him and to discharge from two sinuses. X rays disclosed osteomyelitis of the metacarpal bone, and he then reported the injury. An operation was subsequently performed on the employe's hand, and at the time of the hearing amputation was still a distinct possibility. The industrial commission allowed compensation over the employer's protest that there had been no notice within the statutory limits. In affirming the award, this court said (186 Minn. 88, 242 N. W. 400):

"While it is fully appreciated that the provisions of notice by employes, accidentally injured, serve important purposes, viz. to give the employer opportunity to ascertain facts and guard against fictitious demands and also to bar stale claims, yet, recognizing that latent accidental injuries also result in disability, loss of members of the body, and death, and are intended to be compensable, it must follow that in the reasonable construction of [Mason St. 1927] § 4280 [M. S. A. 176.16] as to notice of such, the time for giving the same begins to run when disability occurs, or when it becomes reasonably apparent that disability or loss of member is likely to occur."

On the other hand, in Bruggeman v. Ford Motor Co. 225 Minn. 427, 30 N. W. (2d) 711, an employe, while in the course of his employment on June 7, 1944, slipped from a ladder and landed in a sitting position on the floor. He experienced an instantaneous, severe pain in his spine and adjacent hip areas. He nevertheless continued to work uninterruptedly for 13 months (with the exception of one week, which may or may not have been related to the accidental injury), even though he testified that during that period of time he could not sit down for work without suffering great pain in his back or stand straight in a normal position. He did not seek medical aid or report his injury. On July 18, 1945, he was forced to quit work because of pain, and on August 6, 1945, he sought medical assistance. On August 15, 1945, an operation was performed to remove a herniated intervertebral disc. A report of the operation was furnished the employer's medical department on September 14, 1945. The commission found that no report of the injury had been made within the 90-day statutory period. After filing a claim petition, under which the employer denied liability, the employe argued that within the rule of Clausen v. Minnesota Steel Co. 186 Minn. 80, 242 N. W. 397, *supra,* the notice received by the employer on September 14, 1945, constituted notice within the 90-day statutory period. The commission denied his claim, and in affirming the decision this court said (225 Minn. 430, 30 N. W. [2d] 713):

"Obviously, it is a question of fact to be resolved by the trier of fact whether an individual case comes within the latent or trivial injury rule. * * * An injury which was so productive of pain and so constantly fruitful of physical disability as to deprive relator of the normal functional use of his body was not so latent or trivial in its nature as to give him reasonable ground for not giving notice within the statutory period."

From the testimony given by employe himself in the instant case, it appears that the pain in his back following the injury became so increasingly severe for about two weeks after the time he jumped from the tractor that it began to radiate down his leg; that the discomfort was such as to lead him to complain to his foreman and a coemploye; and that because of these complaints this coemploye relieved him of some of his more arduous tasks. However, he did not say that he told employer's foreman that this condition was the result of his jump. At the expiration of about the second week following the injury and about October 18 he consulted a doctor and, on the latter's advice, remained away from work for four days. It is our opinion that under the rule of the Bruggeman case the injuries claimed by employe here were not so trivial or latent in their nature as to give him reasonable ground for not giving notice within the statutory period, as stated above.

Employe also argues with a great deal of ingenuity that since under § 176.14 no compensation will be allowed for the first week *after disability commences* (unless the disability continues for four weeks or longer) and that, since the Bruggeman case states that (225 Minn. 429, 30 N. W. [2d] 712) "the time for giving notice * * * runs from the time when it becomes reasonably apparent that such injury * * * is likely to cause, compensable disability," therefore there was no compensable disability until the end of the first week of employe's disability, which he claims did not take place until November 20, 1948 (October 18 to 24 and November 17 to 20 constituting the waiting period). Since the telephone notice was

given employer on or about January 25, 1949, employe concludes that the notice was within the statutory period.

We think that the argument does not advance employe's cause, for several reasons. The first reason is that employe's theory begs the question propounded in the Bruggeman case. That case states that notice is required to be given within 90 days of the time when it becomes reasonably apparent to the injured party that a compensable disability is likely to occur. We think it fairly inferable, as we have stated previously, that the commission could have found that employe should reasonably have known on or before October 18 that his injury was likely to cause compensable disability, and hence that he should have reported it at that time. The further fact that he may or may not receive compensation for the first week of disability has no bearing on the requirement to give notice. The purpose of the statute requiring a waiting period before compensation will be allowed is to prevent malingering (Phoenix Hosiery Co. v. Industrial Comm. 207 Wis. 597, 600, 242 N. W. 135, 136, 81 A. L. R. 1257), or to prevent workmen who are so inclined from taking advantage of a slight or imagined strain as an excuse for obtaining a few days' vacation on half or two-thirds pay. 2 Schneider, Workmen's Compensation Law (2 ed.) § 399. This is a substantially different reason from that requiring notice and defeats this attempt to read the provisions of one statute into the provisions of the other.

Affirmed.