EDWARD SOBCZYK v. CITY OF DULUTH AND ANOTHER.[1]

December 9, 1955.

No. 36,644.

*Reavill, Jenswold, Neimeyer & Johnson,* for relators.
*M. J. McKeon,* for respondent.

DELL, CHIEF JUSTICE.

Certiorari to review an order of the Industrial Commission reversing the decision of the referee and awarding compensation benefits to the employee, Edward Sobczyk.

On August 18, 1952, and for approximately 40 years prior to that date, Sobczyk was employed by the fire department of the city of Duluth. He was the captain of the station located in Gary-New Duluth. Shortly after noon on that day Sobczyk, together with firemen Warren Bernston and Stanley Gralla from his station, responded to an alarm at the American Steel & Wire Company. They were called to rescue an unidentified man who had fallen into the slag dump located at the south end of the company's plant. He

[1]Reported in 73 N. W. (2d) 795.

was found lying at the bottom of the dump almost fully covered by weeds. It was approximately 100 feet from the bottom of the dump to the surface, and to reach the man it was necessary to descend a slope estimated at somewhere between 45 and 70 degrees.

Assistant Chief W. J. Smith also responded to the alarm and arrived at the scene shortly after Sobczyk and his crew. Immediately thereafter an ambulance and two men arrived. Smith took charge of the operation as soon as he came upon the scene. He directed Sobczyk to take a ladder down to the bottom of the dump to be used in carrying the injured man to the surface. Sobczyk, Bernston, Gralla, and the two ambulance men, together with one or two men from the American Steel & Wire Company, all assisted in carrying the injured man to the surface. The man was placed on a stretcher which was strapped to the ladder and the rescuers attempted to hold the ladder in a horizontal position in their ascent of the slope. Smith, and a few other men standing at the top of the slope, pulled on a rope fastened to the ladder in an effort to lighten the load as the men ascended with the injured man.

The rescue operation was described by the participants as being very arduous and very tiring work. Because of the steep slope and the fact that its surface was composed of a fine flue dust, broken bricks, rocks, and debris, it was very difficult for the men to maintain their footing and to hold the ladder in a horizontal position. All of the men were breathing hard when they reached the top and all were tired out from the climb.

Sobczyk, who was 63 years of age at the time, evidently was more tired than the others and let go of the ladder about eight feet from the top of the slope. He was described by witnesses as "breathing hard," "very red in the face," "kind of bluish in the face," and generally, quite tired. Smith noticed that Sobczyk was "pretty much all in," and "gasping for breath." He told him to "take a breather." Sobczyk sat down on the running board of the fire engine for a few minutes and took a pill prescribed by a doctor in 1941 to be used whenever he suffered from sharp pains in the region of his heart. He made no mention of his pain nor did he make any complaint of

being ill to Smith or to any of his other superiors. There is nothing in the record to indicate that anyone saw Sobczyk take the pill.

After they returned to the fire hall Sobczyk went upstairs and rested for a short time. He continued to work on August 18, 1952, and regularly thereafter except for a week in October when he was in the hospital suffering from a hemorrhage of the nose. On January 19, 1953, Dr. William J. Ryan, a private physician, was called to the fire hall in Gary-New Duluth because Sobczyk was suffering from double vision. Following an examination and the taking of an electrocardiogram, the doctor diagnosed Sobczyk's condition as "hypertensive cardiovascular disease, sometimes called hypertensive heart disease." Sobczyk did not work after January 19, 1953, and resigned from the fire department to accept a pension on August 1, 1953. Normally he would have retired from the department on October 26, 1953, the day he was 65 years old. He made no claim personally against the city of Duluth or the fire department and, while he signed a claim petition for compensation on February 23, 1953, in his lawyer's office, it was not filed with the Industrial Commission until August 5, 1953.

The referee found that on August 18, 1952, Sobczyk suffered an accident arising out of and in the course of his employment but disallowed compensation benefits to him since the referee further found that the employer did not have notice or knowledge of the accident. The commission, on appeal, reversed the referee on the latter finding and awarded compensation holding that the employer did have actual knowledge of the injury within the time prescribed by statute.

While the employer claimed that Sobczyk did not, on August 18, 1952, sustain an accident arising out of and in the course of his employment, the finding that he did is not assigned as error. The sole issue before us for review is whether the commission erred in finding that the employer had actual knowledge of the injury within 90 days after its occurrence. At the time of the accident the controlling statutory provisions were found in M. S. A. 1949, § 176.16.[2]

---

[2] M. S. A. 1949, § 176.16, was repealed by the 1953 legislature but was enacted in substantially identical form as M. S. A. 176.141.

That statute read in part:

"Unless the employer shall have actual knowledge of the occurrence of the injury, or unless the injured workman, or a dependent, or some one in behalf of either, shall give notice thereof to the employer in writing within 14 days after the occurrence of the injury, then no compensation shall be due until such notice is given or knowledge obtained. * * * *Unless knowledge be obtained or notice given within 90 days after the occurrence of the injury, no compensation shall be allowed.* " (Italics supplied.)

It is clear from the record that no formal notice of the injury was given to the employer prior to the filing of the claim petition with the Industrial Commission in August 1953. That date is well beyond the 90-day period specified in the statute. The commission held, however, that the employer had actual knowledge of the "occurrence of the injury" within the meaning of the statute when the Assistant Chief W. J. Smith noticed the respondent "gasping for breath" and told him "you'd better go and take a breather." If Smith did have actual knowledge of the occurrence of an injury, then the employer had knowledge, since the law is well settled that knowledge of the occurrence of an injury to an employee gained by a foreman or superintendent is imputed to the employer.[3]

This court held in Clausen v. Minnesota Steel Co. 186 Minn. 80, 242 N. W. 397, that "injury" as used in the phrase "occurrence of the injury" had a different meaning than "accident." It was there held that the act, in referring to the "occurrence of the injury," meant compensable injuries which occur when disability appears, or when it becomes reasonably apparent that disability is likely to occur.[4] Thus, the knowledge which the employer must have in order

[3]Markoff v. Emeralite Surfacing Products Co. 190 Minn. 555, 252 N. W. 439; Ogren v. City of Duluth, 219 Minn. 555, 18 N. W. (2d) 535; Miller v. Peterson Const. Co. 229 Minn. 22, 38 N. W. (2d) 48; Sokness v. City of Virginia, 231 Minn. 215, 42 N. W. (2d) 551.

[4]In most states which have an "injury" type statute there is now almost complete judicial agreement that the claim period runs from the time compensable injury becomes apparent. 2 Larson, Workmen's Compensation Law, § 78.42(a), and cases cited therein.

to satisfy the statute and to excuse the employee from giving notice as required by § 176.16 is knowledge of the injury as distinguished from knowledge of the accident.[5]

"Actual knowledge" as used in § 176.16 has been defined as information on which to base inquiries if the employer so desires or, at a minimum, information such as a reasonable man would usually act upon in the ordinary course of human affairs.[6] Here the record shows that all the men who assisted in carrying the injured man to the top of the slope were breathing hard and were tired from their difficult climb. They testified that the rescue operation was very hard work, in fact, fireman Gralla said that "It was really one of the worst things I have ever done in my life * * *." Although Assistant Chief Smith told Sobczyk to "take a breather," the latter did so for only a short period of time and at no time did he complain to Smith or anyone else that he was feeling ill. Sobczyk testified that when he reached the top of the slope the pain in his heart was almost impossible to describe, that it was "ungodly" and "inhuman." Yet upon the record here, without some mention of these symptoms to Smith, it is unreasonable to assume that Smith would recognize the seriousness of Sobczyk's condition or that it was likely to result in disability. Certainly the knowledge which Smith had of respondent's condition was not such as to put a reasonable man on inquiry, or such as would obviate the necessity of the employee's giving notice within the statutory time.

Moreover, Sobczyk continued to work regularly except for a seven-day interruption in October and one day in December until January 19, 1953. He testified that after the rescue operation he did not

---

[5]While the Clausen case, *supra*, dealt with the latent- or trivial-injury rule, it is not necessary for our purpose to determine whether the instant case falls within that rule. The manifestation of the injury and resulting disability occurred, at the latest, upon and immediately following Dr. Ryan's examination of Sobczyk on January 20, 1953. Yet the first notice to the employer was not given until six months later when the claim petition was filed with the commission in August 1953.

[6]Nelson v. Reid and Wackman, 228 Minn. 137, 36 N. W. (2d) 544; Rinne v. W. C. Griffis Co. 234 Minn. 146, 47 N. W. (2d) 872; Horovitz, Workmen's Compensation, p. 253.

feel good and that he was not fit for anything. Still he made no complaint of his illness or general condition to any of his superiors. He testified that the reason he made no complaints to Smith was because he was endeavoring to hide his condition as much as possible. It is clear that Sobczyk's symptoms were sufficiently alarming to indicate to an ordinarily prudent person that compensable disability might reasonably result and that, therefore, notice to his employer should be given. As was stated in Bruggeman v. Ford Motor Co. 225 Minn. 427, 430, 30 N. W. (2d) 711, 713, "An employe who sustains injuries that are obviously serious and reasonably likely to cause disability may not gamble on the outcome in the hope that he will recover, and, when he loses the gamble, escape the consequences of his failure to give his employer the required notice. Resolute indifference to alarming symptoms of injury, whether by the employe or the employer, is not a virtue under the laws governing workmen's compensation."

The workmen's compensation provisions of our statutes were enacted as social legislation seeking the accomplishment of humane purposes consistent with the social purpose of the act. Its provisions should be construed broadly and liberally in order to effectuate that purpose. However, that does not require us to interpret its various sections so as to defeat the rights and interests of the employer granted to him under the act. The purpose of the notice requirement is twofold; first, it enables the employer to furnish immediate medical diagnosis and treatment with a view to minimizing the seriousness of the injury, and, second, it affords protection to the employer by enabling him to investigate the facts and question witnesses while their memories are unfaded.[7] Thus, the notice and actual knowledge provisions of the statute serve an important function, namely, the protection of the legitimate rights and interests of the employer, and they should not be lightly regarded as mere technicalities.

[7] 2 Larson, Workmen's Compensation Law, § 78.20; Miller v. Peterson Const. Co. 229 Minn. 22, 38 N. W. (2d) 48; Rinne v. W. C. Griffis Co. 234 Minn. 146, 47 N. W. (2d) 872; Teigue v. Appleton Co. 221 S. C. 52, 68 S. E. (2d) 878; Salt Lake City v. Industrial Comm. 104 Utah 436, 140 P. (2d) 644.

The commission relied on the case of Ogren v. City of Duluth, 219 Minn. 555, 18 N. W. (2d) 535, in finding that the employer had actual knowledge of the occurrence of the injury. That case is distinguishable from the instant case. There the question of occupational disease was involved rather than that of accidental injury. The pertinent statute dealing with occupational disease is M. S. A. 176.664, which reads in part as follows:

"Any claim for occupational disease is barred unless within 90 days after *disablement* of an employee as defined in section 176.66, subdivision 1, notice thereof in accordance with section 176.16 shall have been given to the employer, * * *." (Italics supplied.)

Thus, in the Ogren case it was notice of disablement rather than notice of the "occurrence of the injury" that controlled. Moreover, in the Ogren case the employee was permanently disabled immediately and never returned to work while in the instant case Sobczyk continued to perform his regular duties for approximately five months after the "accident." In the Ogren case the employer, through the captain in charge of the fire station, the employee's superior, had actual knowledge of the disablement within ten minutes after its occurrence (219 Minn. 557, 18 N. W. [2d] 536) "and inquired, as it was his duty to do under the circumstances, whether there was anything he could do for him." The day following his disablement the employee was hospitalized for about ten days and died from his occupational disease in about a year. Furthermore, in the Ogren case the condition of the employee was not caused by any outward exertion or strenuous activity while in the course of his employment. In the instant case there was a reasonable explanation for the condition of the employee since all of the people who had participated in the rescue operation were breathing hard and were quite tired out.

It is well settled that the findings of the Industrial Commission are entitled to great weight and will not be disturbed by this court unless they are manifestly contrary to the evidence.[8] Thus, if after

[8] Dunnell, Dig. & Supp. § 10426; Rinne v. W. C. Griffis Co. 234 Minn. 146, 47 N. W. (2d) 872; Graf v. Montgomery Ward & Co. Inc. 234 Minn. 485, 49 N. W. (2d) 797.

an impartial consideration of the evidence and of the inferences which may be drawn therefrom reasonable minds may reach different conclusions, the findings must stand. In this case, however, the finding of the commission that the employer had "actual knowledge of the occurrence of the injury" is manifestly contrary to the evidence presented. Had the respondent complained of his illness or symptoms to Assistant Chief Smith, then the employer could be deemed to have information such as a reasonable man would usually act upon in the ordinary course of human affairs. But the mere witnessing of a 63-year-old employee experiencing the fatigue shown by the record here after a task reported to be extremely difficult by all those who participated in it is not sufficient information to put an employer on notice that the employee is likely to have a compensable disability in the near future. It is not enough that the employer, through his representatives, is aware that the employee is tired out from his work. There must in addition be some knowledge of accompanying facts indicating to a reasonably conscientious employer that the case might involve a potential compensation claim.[9]

In view of the following dissent it should be pointed out that it cannot be inferred from the record, as the dissent suggests, that the reason the employee made no complaint to his superiors about his condition was because of "his unawareness of the seriousness of his condition." To the contrary, the evidence shows that although the employee claims he was in serious condition he did not complain to his superiors because he was trying to hide his condition from his employer. His testimony upon that point is as follows:

"Q. On this day of August 18, 1952, did you complain to anybody about feeling sick?

"A. No.

"Q. You didn't complain to Mr. Smith, Bill Smith?

"A. No.

"Q. The Assistant Chief?

"A. No.

"Q. He was your immediate superior, was he not?

[9] 2 Larson, Workmen's Compensation Law, § 78.31 (a).

"A. That's right.

"Q. You didn't make any complaints to him at all?

"A. No.

"Q. At any time?

"A. No, not that I know of. *I was trying to hide this as much as possible.*

"Q. You didn't make any complaints to anybody else in the fire department, did you?

"A. No, no.

"Q. You didn't make any complaints to the chief?

"A. No.

"Q. When did you first make a claim for compensation?

"A. When I saw Mr. McKeon.

"Q. Approximately when was that? Was it last summer?

"A. Was it about last May? Wait a minute, I'll tell you when it was. It was January 17, 1953." (Italics supplied.)

The dissent apparently to some extent relies on Sokness v. City of Virginia, 231 Minn. 215, 42 N. W. (2d) 551, and Rinne v. W. C. Griffis Co. 234 Minn. 146, 47 N. W. (2d) 872. While those cases cited the Ogren case on the question of knowledge by the employer of the occurrence of an injury, it would seem clear that on the facts they have no application to the instant case. In the Sokness case the employee, within 90 days after the injury occurred, informed numerous persons connected with the city government of Virginia, the employer, relative to the facts concerning his disability resulting from the accident. Among those informed were the chief of police; the officer in charge of records of injury cases, whose duties included making reports to the city's police and fire commission; the assistant chief of police; two lieutenants of police; and some of the members of the city commission. In the Rinne case it was held that the employer did not, within 90 days, have actual knowledge of the occurrence of the injury, nor did it have the required written statutory notice. Accordingly the findings of the commission denying compensation benefits to the employee were affirmed.

The order of the Industrial Commission allowing compensation must be reversed.

Reversed.

THOMAS GALLAGHER, JUSTICE (dissenting).

I am of the opinion that under M. S. A. 1949, § 176.16, the employer through its representative W. J. Smith, assistant chief of the Duluth fire department and the immediate superior of the employee, had actual notice of the occurrence of an accidental injury arising out of and in the course of employment. Section 176.16 states:

"Unless the employer shall have *actual knowledge of the occurrence of the injury,* or unless the injured workman, or a dependent, * * * shall give notice thereof * * * then no compensation shall be due * * *." (Italics supplied.)

It is to be noted that throughout this section actual knowledge is treated as synonymous with notice in writing, and that emphasis is placed not upon knowledge of the accident but rather upon knowledge of the occurrence of an accidental injury. In discussing what constitutes actual knowledge thereunder, in Ogren v. City of Duluth, 219 Minn. 555, 557, 18 N. W. (2d) 535, 537, this court stated:

"* * * The statute does not require written notice of death or injury where the employer has actual knowledge. Actual knowledge by an officer or agent standing in the employer's place for the time being is actual knowledge of the employer. Markoff v. Emeralite Surfacing Products Co. 190 Minn. 555, 252 N. W. 439 (actual knowledge of employer's superintendent acquired ten minutes after the injury); State ex rel. City of Northfield v. District Court, 131 Minn. 352, 155 N. W. 103, Ann. Cas. 1917D, 866 (actual knowledge of city's mayor and street commissioner acquired immediately after the injury). Actual knowledge of an officer *in charge of a fire station of the happening of an accidental injury* is actual knowledge on the part of the city. Salt Lake City v. Industrial Comm. 104 Utah 436, 140 P. (2d) 644 (lieutenant in charge of fire station)." (Italics supplied.)

The Ogren case has been cited and followed on the question of notice of injury in two subsequent decisions. Sokness v. City of Virginia, 231 Minn. 215, 42 N. W. (2d) 551; Rinne v. W. C. Griffis Co. 234 Minn. 146, 47 N. W. (2d) 872.

Here, Mr. Smith testified as to employee's appearance and condition immediately after the rescue work had been completed. He testified that he had observed the employee after he got to the top of the embankment where the rescue work was taking place. In his own words, "he was pretty much all in. He was gasping for breath. I'm not sure, but I think I said, 'You'd better go and take a breather.' As I recall, he went over and sat on the running board of the apparatus." He described the operation as "really a tough job." In addition, he had a general knowledge of the circumstances surrounding the entire operation. He knew of the steepness of the slope and the distance to the bottom of the pit. He knew the manner in which the injured man was strapped upon the ladder, and observed that the crew rescuing him, including respondent, attempted to hold the ladder in a horizontal position during the trip to the top of the slope. He knew of the employee's advanced years. Another fireman described the operation as "one of the worst things I have ever done in my life."

The employee testified that when he had reached the "top" the pain in his heart was almost "impossible"; "ungodly" and "inhuman." The fact that he made no complaint at that time should not be of controlling significance since his failure in this respect may have been occasioned by his unawareness of the seriousness of his condition or by his hope that a rest might restore him to full capacity. While all firemen involved in the rescue operation no doubt showed signs of fatigue, only the employee here involved appeared in such poor condition that his superior promptly suggested that he take a "breather."

Based upon the evidence outlined, I am of the opinion that the commission's finding that the employer had actual knowledge that the employee had sustained an accidental injury is amply sustained, particularly in view of the liberal construction which should be

applied to the workmen's compensation act. Graf v. Montgomery Ward & Co. Inc. 234 Minn. 485, 49 N. W. (2d) 797; Jurich v. Cleveland-Cliffs Iron Co. 233 Minn. 108, 46 N. W. (2d) 237.